MAURICE WRENN *vs.* THE CONNECTICUT BRASS
COMPANY.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Under our Workmen's Compensation Act (§§ 5351, 5352) an employee
who receives an injury arising out of and in the course of his em-
ployment, consisting of a fracture of a forearm resulting in the
complete and permanent loss of the use of the arm, is entitled to
compensation for total or partial incapacity, as the case may be,
while the arm is under treatment in the expectation of a complete
or partial cure or improvement in its physical condition or appear-
ance and until it appears from competent professional opinion
that it is not reasonable to expect such cure or improvement, and
thereafter he is entitled to the specific indemnity provided in
§ 5352 for the loss of use of the arm, without deduction of the
amounts previously paid, since the Act provides for both grounds
of recovery.

The case of *Franko* v. *Schollhorn Co.*, 93 Conn. 13, approved and
followed.

Submitted on briefs January 20th—decided February 21st, 1921.

APPEAL by the defendant from a finding and award
of the Compensation Commissioner of the fifth dis-
trict, acting for and in place of the Commissioner of
the third district, in favor of the plaintiff, taken to
and tried by the Superior Court in New Haven County,
*Webb, J.;* the court affirmed the Commissioner's award
and dismissed the appeal, and from this judgment
the defendant appealed. *No error.*

*DeLancey S. Pelgrift,* for the appellant (defendant).

*Francis P. Guilfoile* and *William K. Lawlor,* for the
appellee (plaintiff).

WHEELER, C. J.   The plaintiff, on March 6th, 1915,
sustained a severe fracture of his left forearm which

left his arm in a "twisted and unnatural position." We ascertain from the finding that a competent surgeon was of the opinion that the operation of effecting a bone graft would make a useful arm of the injured member. Operations of this character are often successful. The operation was made, and by the latter part of April, 1916, the forearm had become straight, and the surgeons believed that good functional results would follow, and a useful arm follow the operation. Instead, a suppurative process persisted, and on June 26th, 1916, it was necessary to further operate in order to prevent a more serious condition, and this wound finally healed August 21st, 1916.

The arm has never been a useful arm since the original injury, and at no time has it been useful for industrial purposes.

The finding of the commissioner is not as definite as it should have been, but, reading the finding as a whole and in the light the parties construe it, we think it must be understood as finding that the expectation of effecting a cure and making the arm useful was definitely abandoned on June 26th, 1916. We also think the finding must be read as stating that the arm was not a complete and permanent loss until on and after June 26th, 1916. Until that time high professional opinion expected that the arm would, as a result of the operation, be rendered useful, but, due to the development of untoward conditions, the operation proved unsuccessful in its results.

All reasonable efforts should be used to save an injured arm or limb, and thus prevent the necessity for its amputation, or its complete loss of usefulness. Until the time for such effort has passed, professional skill should be directed to the attempt to effect a cure. When competent professional opinion, upon fair examination, reaches the conclusion, or should reach

the conclusion, that it is not reasonable to expect to cure or improve the injured arm, it can then be said for the first time that the loss of this member has occurred. Then, unless something further must be done to improve or heal the member, there exists the condition described in the statute (§ 5352), "the complete and permanent loss of the use of one arm," and the specific compensation provided by statute is then due. But this does not compensate the injured employee for the period between the date of injury and the date of determination of the complete loss of use. The incapacity during this period may have been total or partial, and our Act provides compensation for this period of incapacity as well as for the complete and permanent loss of the use of the arm.

We reached the conclusion in *Franko v. Schollhorn Co.*, 93 Conn. 13, 104 Atl. 485, that an employee, suffering an injury to a finger which prevented him from working at all for a time, was entitled to receive compensation for the period of total incapacity, and, when the finger was subsequently amputated as a result of the accident, he was also entitled to the specific compensation provided for the loss of that member. This case compels a reconsideration of that case, and its restudy has satisfied us with the justness of its result and the soundness of its logic and its reasoning. On page 19 we said: "The handicap determines the loss. But when the loss of the member is preceded by a long incapacity while efforts are made to heal and cure the injury, the injured employee has suffered far more than from the mere loss of the member. Compensation for the loss of the member will not compensate him for the period of incapacity preceding the loss of the member. The just rule of compensation will give compensation for the period of total incapacity as well as for the loss of the mem-

ber." We fully agree with the application of the principle as decided in that case as made by the commissioner and the trial court to this case: "There is no difference in principle between the *Franko* case and this case."

The loss of the arm through amputation occurs when the amputation takes place. The complete and permanent loss of the use of the arm occurs when no reasonable prognosis for complete or partial cure, and no improvement in the physical condition or appearance of the arm can be reasonably made. Until such time the specific compensation for the loss of the arm, or for the complete and permanent loss of its use, cannot be made.

In this case the treatment of the arm was continued up to August 21st, 1916, and, as we understand the finding, ceased and the wound in the arm finally healed at this time. Not until then did the period of incapacity for which the injured employee was entitled to compensation cease and the condition of a complete and permanent loss of the use of the arm exist.

We are not impressed with the argument of the defendants that this interpretation of the Act will lead employers and the insurers of employers to cause the amputation of the injured member instead of seeking to effect in all cases a cure before resorting to amputation. Our faith in the humanity and integrity of employers and insurers, and in the good faith and professional honor of surgeons, forbids our adoption of so repulsive a conclusion.

There is no error.

In this opinion the other judges concurred.