WILLIAM J. MORGAN, ADMINISTRATOR (ESTATE OF WILLIAM T. MORGAN), ET AL. *v.* TOWN OF EAST HAVEN (13319)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued May 31—decision released August 16, 1988

*Kenneth A. Votre,* for the appellants (plaintiffs).

*Robert M. Ward,* for the appellee (defendant).

ARTHUR H. HEALEY, J. The issue on this appeal is whether an award made pursuant to General Statutes § 7-433c[1] for a permanent partial disability is an asset

---

[1] General Statutes § 7-433c provides: "BENEFITS FOR POLICEMEN OR FIRE-MEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his emloyment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case

of a deceased recipient's estate. The plaintiffs, administrators of the recipients' estates,[2] appeal from the judgment of the trial court, *Fracasse, J.*, denying a motion for execution on an award issued to William T. Morgan by compensation commissioner Darius Spain (commissioner). We find no error.

The basic facts are not disputed. On or about April 15, 1955, Morgan became a uniformed employee of the East Haven fire department. Prior to his employment, Morgan underwent a physical examination that did not reveal any evidence of hypertension or heart disease. By the time of his retirement from the fire department, Morgan had attained the rank of chief.

On December 31, 1981, while in the employ of the East Haven fire department, Morgan suffered "congestive heart failure with underlying cardiomyopathy." Morgan retired from the fire department on January 15, 1982, at a salary of $21,700 per year. His pension benefits from the town were $931.40 per month.

may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

[2] William T. Morgan, to whom the award was originally made, died on January 12, 1985. William J. Morgan is the administrator of his estate. Doris K. Morgan, the widow of William T. Morgan, died March 2, 1986. Betty G. Levy is the administrator of her estate.

Subsequent to his heart failure, Morgan applied to the town of East Haven for benefits pursuant to General Statutes § 7-433c. After a hearing, the commissioner issued a finding and award on January 26, 1983. On March 7 and 16, 1983, the commissioner issued supplemental findings and awards. On May 25, 1983, the commissioner issued a final amended finding and award. The May 25 finding stated that, as a result of his heart disease, Morgan was entitled to benefits pursuant to § 7-433c, that he had a 75 percent permanent partial impairment of his cardiovascular system and that maximum medical improvement had been attained on January 22, 1982. The commissioner ruled that Morgan was entitled to 585 weeks of benefits and that his compensation rate according to General Statutes § 31-308 was $278.33.

Morgan died on January 12, 1985, survived by his wife of forty-two years, Doris K. Morgan. Morgan had no minor children at the time of his death. After his death, the town of East Haven continued payments under the award to Doris K. Morgan until her death on March 2, 1986. No payments were made after that date. The parties stipulated that upon Doris Morgan's death there were no surviving dependents, but there were two surviving adult children. The defendant, the town of East Haven, had made a total payment of 233 weeks of benefits: twenty-three weeks at $203.37 per week; fifty-two weeks at $235.78 per week; 135 weeks at $278.33 per week; and forty-six weeks at $154.05 per week commuted to a lump sum of $7086.30.

Following the defendant's cessation of payments, the fiduciaries of the estates of William and Doris Morgan applied for an execution, pursuant to General Statutes § 31-300.[3] The trial court denied the motion for an exe-

---

[3] The language upon which the plaintiffs rely, a short clause in a lengthy statutory section, is as follows: "The court may issue execution upon any

cution and the plaintiffs appealed to the Appellate Court, whereupon, we transferred the case to this court pursuant to Practice Book § 4023.

The history of Connecticut's statute providing benefits for police and fire personnel who suffer from hypertension or heart disease has been "rather tumultuous." *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667, 425 A.2d 131 (1979). The statute in its original form in 1951 established a rebuttable presumption that a uniformed firefighter of a paid municipal fire department who, prior to employment, passed a physical examination without evidence of hypertension or heart disease, and who later suffered from such disease, was presumed to have been injured in the line of duty for purposes of retirement benefits. General Statutes (Sup. 1951) § 175b.[4] The statute was amended a number of times during the 1950s, including an amendment that made it applicable to paid police personnel as well as fire personnel. General Statutes (Sup. 1953) § 308c. In 1961, the legislature amended the provision to make express reference to chapter 568 dealing with workers' compensation. The new hypertension and heart disease provision, General Statutes § 7-433b, provided a rebuttable presumption of injury in the line of duty for purposes of calculating benefits under chapter 568 for police and fire personnel. General Statutes (Sup. 1961) § 433b.

The real turmoil regarding the statute began in 1969, when the legislature amended the provision to include a *conclusive* presumption of injury in the line of duty for those police or fire personnel who suffered from

uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the superior court . . . ." General Statutes § 31-300.

[4] General Statutes (Sup. 1951) § 175b was part of chapter 48, entitled "Retirement of Municipal Employees." General Statutes § 7-433c is part of chapter 113 which simply is entitled "Municipal Employees."

hypertension or heart disease. General Statutes (Sup. 1969) § 7-433a. This court struck down the conclusive presumption as violative of due process under both the Connecticut and United States constitutions. *Ducharme* v. *Putnam,* 161 Conn. 135, 143, 285 A.2d 318 (1971).

Following the *Ducharme* decision, the legislature passed the current hypertension and heart disease provision which has been amended only once.[5] To avoid the prior constitutional difficulties of the statute, the legislature did not include the benefits available under § 7-433c as compensation under the workers' compensation scheme, chapter 568.[6] Rather, the current provision is "separate and distinct legislation" from chapter 568. *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475 A.2d 283 (1984). It provides "an outright bonus" to those police and fire personnel who qualify and thus is not a taking of property without due process of law. *Grover* v. *Manchester,* 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975). Chapter 568 is used only as a "procedural avenue" for administration of the benefits under § 7-433c so that a duplicate procedure would not have to be created solely for § 7-433c. *Bakelaar* v. *West Haven,* supra, 68, citing *Plainville* v. *Travelers Indemnity Co.,* supra, 671–72.

General Statutes § 7-433c states that if a uniformed member of a paid municipal police or fire department, who successfully completed a physical examination prior to employment, suffers from hypertension or heart disease, on or off duty, and as a result dies or is disabled permanently or temporarily, partially or totally, "he or his dependents, as the case may be,"

---

[5] In 1977, the legislature amended General Statutes § 7-433c to clarify that the benefits under this section are in lieu of other benefits under chapter 568 or a state or municipal retirement system. Public Acts 1977, No. 77-520, § 1.

[6] See footnote 5, supra.

shall receive compensation from the municipal employer in accordance with the procedures of chapter 568 as if the employee were injured in the course of employment. Despite this language, the plaintiffs suggest that this case should not be controlled by statutory interpretation, and that benefits under § 7-433c should not be limited to the employee and that person's dependents. They contend that once an award is made pursuant to § 7-433c, the rights of the parties should be controlled by an analysis of the award under principles of workers' compensation law. We are not persuaded by this argument.

"We have consistently held that if a statute is clear and unambiguous, there is no room for construction." *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987), citing *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981); *Zimmer* v. *Essex,* 38 Conn. Sup. 419, 421, 449 A.2d 1053 (1982) ("[w]hen applying this provision [7-433c], we are bound to effectuate the intent of the legislature as expressed by the words contained within it; where the terms of the statute are, as here, unambiguous, we cannot speculate as to any unexpressed legislative intent"); see 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 46.04. The language of § 7-433c is clear and unambiguous. The statute has mandatory language requiring that the municipal employer compensate the afflicted police or fire department employee and that person's dependents.[7] The clarity of this requirement is illustrated by the fact that the legislature referred to the employee or *that person's dependents* three times

---

[7] General Statutes § 7-433c provides that the employee or the dependents "shall receive" compensation from the municipal employer. Absent express intent to the contrary, "shall" denotes a mandatory duty. *Graham* v. *Zimmerman,* 181 Conn. 367, 371, 435 A.2d 996 (1980).

in the compensation requirements of § 7-433c. The repetitive use of the term "dependents" indicates that the term was not used inadvertently but rather was used to delineate the class of the ultimate beneficiaries under § 7-433c. We cannot construe "dependents," as used in this statute, to include the estates of the recipients. See J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 26 (definition of dependents under workers' compensation law [General Statutes § 31-306]).[8] Thus, the clear and unambiguous language of the statute requires a municipal employer to provide compensation only to police and fire personnel who suffer from hypertension and heart disease and their dependents, not to the estates of the deceased recipients.[9]

Even if we were persuaded that this issue could not be resolved solely by statutory interpretation, the alternative analysis proffered by the plaintiffs would not alter our result. The plaintiffs suggest that once the compensation is awarded under § 7-433c, there are vested property rights in that award that enable the deceased recipient's estate to receive the benefits upon the recipient's death. According to the plaintiffs, the award in this case vested in the recipients because it was a "specific" award, as opposed to a "special" award.

---

[8] The parties stipulated that the adult children of the Morgans are not dependents, and it is not contended that the estates should be considered dependents.

[9] Our review of the legislative history of General Statutes § 7-433c did not disclose any information relating to compensation of dependents, although resort usually is not made to legislative history where the statute is clear and unambiguous on its face. Additionally, the predecessor statutes to § 7-433c did not contain a limitation of payments to employees and their dependents. It is logical to infer from the inclusion of "dependents" in the current statute that the legislature intended to restrict the benefits that were available under the previous statute. To do otherwise would make the word "dependents" mere surplusage and such an interpretation has been proscribed by this court. See *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 197, 438 A.2d 1178 (1981).

Specific benefits are benefits for the loss or loss of the use of specific body parts. See *Everett* v. *Ingraham,* 150 Conn. 153, 155, 186 A.2d 798 (1962). "These [specific] benefits . . . are not paid as compensation for loss of earning power but to compensate the injured employee for the incapacity through life because of the loss or loss of use of the body member in question." J. Asselin, supra, p. 151. Under the workers' compensation statute, compensation for injuries scheduled in General Statutes § 31-308 often is considered specific compensation.[10] See id., p. 153; see also *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29 n.2, 420 A.2d 905 (1979). The plaintiffs suggest that specific damages in this context are analogous to a tort judgment and, therefore, are liquidated. Thus, they contend that a recipient has a vested right in the award and the right to compensation passes as a liquidated sum to the estate.

On the other hand, a special award is one that is not compensation for the loss or loss of use of a body part, but is compensation for the inability to work as a result of the disability. See *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 307, 135 A. 574 (1926) (*Haines, J.,* concurring); J. Asselin, supra, p. 119 (the author refers to these benefits as "continuing wage benefits").[11] The

[10] Morgan's disability was not included in the scheduled injuries under General Statutes § 31-308. Rather, his compensation rate was established through a list of "non-scheduled injuries" that the commissioners have devised under the authority of § 31-308 (d). See General Statutes § 31-308 (d); J. Asselin, Connecticut Workers' Compensation Manual (1985) pp. 153–57.

[11] In the context of a workers' compensation claim, as opposed to a General Statutes § 7-433c claim, a distinction often is made between specific and special benefits based on the certainty of the award. Awards that are fixed for a certain period of time may be categorized as specific, and claims of uncertain duration may be categorized as special. *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 307, 135 A. 574 (1926) (*Haines, J.,* concurring). Underlying this distinction is the notion that specific awards for the loss of a body part are not contingent on incapacity, and thus, the compen-

plaintiffs, following the reasoning of Justice Haines in his concurring opinion in *Bassett,* suggest that special awards do not survive to the recipients' estates. See *Burns's Case,* 218 Mass. 8, 13, 105 N.E. 601 (1914).

The benefits provided under § 7-433c are more similar to special benefits than to specific benefits under the workers' compensation statute.[12] The preamble in § 7-433c provides that the section was designed to protect against *"economic* loss resulting from disability." (Emphasis added.) Because the term "loss" is restricted to economic loss, it is fair to interpret this statute as limiting benefits calculated under chapter 568 as compensation for the loss of the ability to work.[13] Again, resorting to accepted principles of statutory construction, we conclude that the failure to restrict the meaning of loss in such a way would create surplus language, something that we consistently have held must not be done. See *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 197, 438 A.2d 1178 (1981); *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d 332 (1978); *State* v. *Briggs,* 161 Conn. 283, 287, 287 A.2d 369 (1971).

sation can be fixed at the time of injury. In contrast, a special award often is viewed as contingent on the disability. Id.; see J. Asselin, Connecticut Workers' Compensation Manual (1985) pp. 151, 164.

[12] Although the benefits under General Statutes § 7-433c are calculated by a compensation commissioner in accordance with chapter 568, it is significant that the two statutes are recognized as "separate and distinct legislation." *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475 A.2d 283 (1984). Reference is made to chapter 568 only for legislative efficiency: to avoid duplication of an administrative mechanism. *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 671–72, 425 A.2d 131 (1979). Accordingly, the substantive law of § 7-433c governs claims under that section; chapter 568 is used only for purposes of computation.

[13] The other major type of economic loss is costs for medical care; see 2 F. Harper & F. James, The Law of Torts (1956) § 25.8, p. 1316; 22 Am. Jur. 2d, Damages § 1; which also are compensable under General Statutes § 7-433c. Loss of a body part, although compensable by money damages, is not an economic loss under § 7-433c.

The restriction of compensation obtained under § 7-433c to compensation for economic loss, such as loss of earning capacity, has been expressly noted by the Connecticut Appellate Court. The Appellate Court stated: "The purpose of General Statutes § 7-433c is to protect against a wage loss . . . ." *Middletown* v. *Local 1073*, 1 Conn. App. 58, 63, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984); see *Revoir* v. *New Britain,* 2 Conn. App. 255, 260–61, 477 A.2d 161 (1984) ("The purpose of § 7-433c is to protect firemen and policemen from economic loss. The measure of economic loss must be determined by the extent to which the claimant is precluded from rejoining the work force in his former capacity or any other reasonable occupation due to his disability."). We previously have noted the sound reasoning of the Appellate Court in *Middletown* v. *Local 1073,* supra, on other issues relating to § 7-433c; see *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151, 480 A.2d 519 (1984) (hypertension and heart disease benefits can be deducted as workers' compensation benefits for purposes of establishing municipal pension benefits); and today we approve their stance on the issue of "economic loss." To conclude, as the plaintiffs contend, that the estate of a deceased recipient, who leaves no dependents under § 7-433c, is entitled to the sum of unmatured weekly payments, carries the concept of "economic loss" under § 7-433c beyond the legislative purpose in enacting that statute. Therefore, benefits rendered pursuant to § 7-433c resemble special benefits under the workers' compensation statute, and as such, do not pass to the estate of the recipient.[14]

---

[14] Although the benefits in this case were certain as to the amount payable, thus having a characteristic of a specific benefit, because the substantive provisions of General Statutes § 7-433c are determinative in a claim made under that section, the limiting language in the preamble overrides the specific benefit notion which is a feature of workers' compensation law. See footnotes 11 and 12, supra.

Even if we assume, arguendo, that the benefits in this case could be considered specific benefits, the estate of the recipient still is not entitled to the award in accordance with this court's holding in *Bassett* v. *Stratford Lumber Co.,* supra. Under this court's reasoning in *Forkas* v. *International Silver Co.,* 100 Conn. 417, 420, 423, 123 A. 831 (1924), a workers' compensation award at a particular rate for a particular number of weeks was an unconditional promise to pay a particular amount that succeeded to the administratrix of the deceased recipient. This rationale, however, was overruled partially in *Bassett,* in which case we specifically held that any unmatured part of a weekly compensation scheme does not succeed to the estate of the employee. *Bassett* v. *Stratford Lumber Co.,* supra, 305; see also *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886 (1968); *Finkelstone* v. *Bridgeport Brass Co.,* 144 Conn. 470, 472, 134 A.2d 74 (1957).

In the instant case, the compensation commissioner awarded Morgan 585 weeks of benefits at the rate of $278.33 per week. Forty-six weeks of benefits at $154.05 per week were commuted at and paid in a lump sum of $7086.30. Had the commuted payment been outstanding at the time of Doris Morgan's death, there is little dispute that the outstanding balance of the commuted amount would be due and payable to the estate. At the time of commutation, that portion of the compensation that was commuted became mature and, thus, immediately due and owing. See General Statutes § 31-302.[15] The remainder of the award, however,

---

[15] General Statutes § 31-302 provides: "PAYMENT OF COMPENSATION. COMMUTATION INTO MONTHLY, QUARTERLY OR LUMP SUMS. Compensations payable under this chapter shall be paid at such particular times in the week and in such manner as the commissioner may order, and shall be paid directly to the persons entitled to receive them unless the commissioner, for good reason, orders payment to those entitled to act for such persons; but, when he finds it just or necessary, the commissioner may approve or direct the

still was payable weekly and remained unmatured. Therefore, the holding in *Bassett* controls, and the weekly compensation that remains unpaid does not have to be paid to the estate of the deceased recipient.

The plaintiffs also challenged the authority of the trial judge to deny their application for execution under General Statutes § 31-300.[16] The plaintiffs cited *Taneszio v. Palmieri,* 3 Conn. Cir. Ct. 237, 238, 211 A.2d 840 (1965), for the proposition that issuance of an execution usually is ministerial and a duty of the court. This proposition is correct, but the trial court is not without power to review the application for an execution. The Circuit Court stated that "issuance of an execution is *ordinarily* a ministerial act . . . ." (Emphasis added.) Id. This must not be construed to mean that it is *always* a ministerial process. In fact, Connecticut's trial courts have used their prerogative to intervene in the execution process. See, e.g., *Goodlatte* v. *Liberty Mutual Ins. Co.,* 27 Conn. Sup. 382, 239 A.2d 546 (1967). We are persuaded, therefore, that the trial judge had the authority to deny the plaintiffs' application for an execution.

commutation, in whole or in part, of weekly compensations under the provisions of this chapter into monthly or quarterly payments, or into a single lump sum, which may be paid to the one then entitled to the compensation, and such commutation shall be binding upon all persons entitled to compensation for the injury in question. In any such case of commutation, a true equivalence of value shall be maintained, with due discount of sums payable in the future; and, when commutation is made into a single lump sum, the commissioner may direct that it be paid to any savings bank, trust company or life insurance company authorized to do business within this state, to be held in trust for the beneficiary or beneficiaries under the provisions of this chapter and paid in conformity with the provisions of this chapter."

[16] General Statutes § 31-300 provides in part: "The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the superior court; and, upon the filing of an application to the court for an execution, the commissioner in whose office the award is on file shall, upon the request of the clerk of said court, send to him a certified copy of such award."

Finally, on appeal, the plaintiffs raise equal protection and due process challenges, based on the federal and state constitutions, to the trial judge's interpretation of § 7-433c and chapter 568. The claims were not raised at trial. We do not entertain questions of law that were not raised at trial unless there is a demonstration of exceptional circumstances. Practice Book § 4185; *Hartford National Bank & Trust Co.* v. *Tucker,* 195 Conn. 218, 219–20 n.1, 487 A.2d 528, cert. denied, 474 U.S. 845, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985); *Rokus* v. *Bridgeport,* 191 Conn. 62, 67, 463 A.2d 252 (1983); *Burton* v. *Burton,* 189 Conn. 129, 133 n.3, 454 A.2d 1282 (1983). There being no evidence of exceptional circumstances in this case, we refuse to consider the plaintiffs' constitutional claims.

In summary, the trial court properly denied the application for an execution in this case. General Statutes § 7-433c does not require the payment of benefits to the estate of a deceased recipient; compensation is restricted to the employee and that person's dependents.

There is no error.

In this opinion the other justices concurred.