SUE ANN CAPPELLINO *v.* TOWN OF CHESHIRE ET AL.
(9993)

DALY, FOTI and LAVERY, Js.

Argued October 1, 1991—decision released June 2, 1992

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant (defendant second injury and compensation assurance fund).

*Edward T. Dodd, Jr.,* for the appellee (plaintiff).

LAVERY, J. The sole issue in this case is whether a presumptive dependent is entitled to the full balance of specific benefits awarded to an employee who had reached maximum medical improvement and had collected some of the specific benefits when he became totally incapacitated and received temporary total benefits until his death from an unrelated cause.

The workers' compensation commissioner found that the presumptive dependent was entitled to the full balance of the specific benefit. That decision was upheld by the compensation review division. The second injury and compensation assurance fund appealed. We affirm the decision of the compensation review division.

The finding and award by the commissioner was based on the following stipulation of facts:

"1. On January 22, 1976 claimant, late Peter Cappellino, sustained an injury to his low back arising out of and occurring in the course of his employment with the Town of Cheshire.

"2. In a January 12, 1978 Finding and Award, the Fifth District Commissioner, the Honorable Edward

F. Bradley, found that the claimant sustained a compensable work-related back injury, pursuant to Chapter 565.

"3. In the same January 12, 1978 Finding and Award, Commissioner Bradley ordered liability, after the first 104 weeks, to be transferred to the Second Injury Fund, pursuant to Conn. Gen. Stat. § 31-349.

"4. Transfer to the Second Injury Fund was effective as of January 20, 1978.

"5. From January 22, 1976 until March 21, 1978 the claimant received temporary total disability benefits.

"6. As of March 1, 1978, the claimant reached maximum medical improvement.

"7. On March 21, 1978 Commissioner Bradley approved the Form 36.

"8. On July 3, 1978 Commissioner Bradley approved the specific voluntary agreement reflecting a 30% permanent partial disability of the back.

"9. Claimant received permanent partial disability payments until October 12, 1978 when he became totally disabled again.

"10. From October 12, 1978 until October 4, 1988, the date of death, claimant remained totally disabled.

"11. Claimant's death was a result of a noncompensable 'cardiorespiratory arrest.'"

On the basis of the stipulation of facts, the parties briefed the issue of whether the claimant's presumptive dependent is entitled to the balance of the unpaid permanent partial disability benefits to the workers' compensation commissioner. In the finding and award, the commissioner ruled that the unpaid portion of the permanent partial disability is payable to the claimant's

widow. The second injury and compensation assurance fund appealed this ruling to the compensation review division.

In its decision, the review division stated that "[p]ayments were made under [the specific voluntary] agreement until October 12, 1978, when the decedent again became totally disabled. At that point, the Respondent Fund had only paid (32) weeks of the one hundred fifty-six weeks of specific benefits. However, due to the change in the employee's condition, *the Fund interrupted the series of Sec. 31-308 specific benefits and again paid Sec. 31-307 total disability benefits.* It continued to pay total disability benefits until October 4, 1988, when death occurred for causes unrelated to the compensable injury." (Emphasis added.)

The review division found that the claimant's right to specific benefits vested when the specific voluntary agreement for 30 percent loss of use of the back was approved by the fifth district commissioner on July 3, 1978, and upheld the finding and the award of the commissioner.

From January 22, 1976, until March 21, 1978, the claimant received temporary total disability payments under General Statutes § 31-307[1] which provides compensation for loss or impairment of earning capacity. *Ancona* v. *Norwalk,* 217 Conn. 50, 55, 584 A.2d 454 (1991); *McCurdy* v. *State,* 26 Conn. App. 466, 469–70, 601 A.2d 560, cert. granted, 221 Conn. 920, 608 A.2d 686 (1992). On March 1, 1978, the claimant achieved maximum medical improvement and agreed in a specific voluntary agreement to a 30 percent permanent partial disability of the back.

An award of workers' compensation benefits for permanent partial impairment of one's back is a specific

---

[1] General Statutes § 31-307 was amended by Public Acts 1991, Nos. 91-32, §§ 23, 41, and 91-339 §§ 26, 55. Those amendments do not affect this appeal.

indemnity award. J. Asselin, Connecticut Workers' Compensation Practice Manual (1985), pp. 151–54; see General Statutes § 31-308 (b). "Specific benefits are benefits for the loss or loss of the use of specific body parts. See *Everett* v. *Ingraham,* 150 Conn. 153, 155, 186 A.2d 798 (1962)." *Morgan* v. *East Haven,* 208 Conn. 576, 584, 546 A.2d 243 (1988); *Panico* v. *Sperry Engineering Co.,* 113 Conn. 707, 710, 156 A. 802 (1931). " 'These [specific] benefits . . . are not paid as compensation for loss of earning power but to compensate the injured employee for the incapacity through life because of the loss or loss of use of the body member in question.' J. Asselin, supra, p. 151." *Morgan* v. *East Haven,* supra. Thus, "[c]ompensation in such cases is not dependent upon actual incapacity in whole or in part. *Franko* v. *Schollhorn Co.,* 93 Conn. 13, 104 A. 485 [1918]." *Dombrozzi* v. *Gross & Co.,* 112 Conn. 627, 629, 153 A. 780 (1931); see also J. Asselin, supra, pp. 151–54. "In fact, '[p]ermanent partial schedule awards are based on medical condition after maximum improvement has been reached and ignore wage loss entirely.' 2 A. Larson, Workmen's Compensation Law § 57.13, p. 10-41."[2] *Levanti* v. *Dow Chemical Co.,* 218 Conn. 9, 13–14, 587 A.2d 1023 (1991).

The right to a specific indemnity award survives the claimant if, at the time of his death, the claimant was receiving or was entitled to receive specific award benefits. The benefits for 30 percent permanent partial disability of the back issued in 1978 were suspended when the claimant again became totally disabled, and remained suspended until his death in October, 1988.

---

[2] Maximum medical improvement is that time when there is no reasonable prognosis for complete or partial cure and no improvement in the physical condition or appearance of the injured body member can be reasonably made. *Wrenn* v. *Connecticut Brass Co.,* 96 Conn. 35, 38, 112 A. 638 (1921); see J. Asselin, Connecticut Workers' Compensation Practice Manual (1985), p. 118.

As of the date of death, the balance of the specific benefits vested in the claimant's presumptive dependent. *Morgan* v. *East Haven,* supra, 587; *Finkelstone* v. *Bridgeport Brass Co.,* 144 Conn. 470, 472, 134 A.2d 74 (1957); *Bassett* v. *Stratford Lumber Co.,* 105 Conn. 297, 299, 135 A. 574 (1926). Once the claimant's loss of earnings ends, as in this case by death, the worker or his dependent is entitled to the balance of the specific indemnity award. J. Asselin, supra, p. 159.

The only right of setoff occurs under § 31-308 (c) which provides in pertinent part that "the commissioner shall, in his discretion, direct that the claimant, where the injury results in a loss of earnings and it is in the interests of the injured worker to be paid on that basis *notwithstanding that the injured member may have attained maximum improvement,* be paid partial compensation for loss of earnings, as provided above, and *that such payments shall be made for as long as such loss of earnings shall continue;* and if the injured worker's loss of earnings shall end, he shall be paid for such permanent injuries in accordance with the provisions of subsection (b) of this section, *minus any payments by way of partial compensation, for weeks subsequent to the date on which maximum improvement in the injured member had been attained. . . ."*[3] (Emphasis added.) If the claimant had been incapacitated due to an injury but remained able to perform some employment, although not his customary work, he would have been entitled to benefits under § 31-308 (a).[4] *Hansen*

---

[3] "[W]e propose where there is partial loss of earnings from the injury, the commissioner can direct payment of such partial loss of earnings until such loss of earnings has ended, and the commissioner can then require the payment of the specific due for permanent loss, minus such partial payments." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 227, remarks of Representative Paul Pawlak, Sr., regarding Public Acts 1967, No. 842, § 15, now General Statutes § 31-308 (c).

[4] General Statutes § 31-308 (a) provides in pertinent part: "If any injury for which compensation is provided under the provisions of this chapter

v. *Gordon,* 221 Conn. 29, 39, 602 A.2d 560 (1992). Here, however, the parties stipulated to the fact that the deceased was totally incapacitated as of October, 1978, and the commissioner concurred. The compensation review division found that the payments made by the second injury fund from October 12, 1978, to October 4, 1988, were temporary total disability payments made under § 31-307. Therefore, there is no statutory right of setoff as there would have been if the claimant had received partial disability benefits under § 31-308 (c).

The decision is affirmed.

In this opinion the other judges concurred.

---

results in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the amount he is able to earn after such injury . . . ."

General Statutes § 31-308 was amended by Public Acts 1991, Nos. 91-32, §§ 26, 41, and 91-339, §§ 28, 55. That amendment does not affect this appeal.