LEO LAMBERT *v.* CITY OF BRIDGEPORT ET AL.
(13095)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued June 3—decision released August 4, 1987

*Mark T. Anastasi,* associate city attorney, for the appellants (named defendant et al.).

*Bruce L. Levin,* for the appellee (plaintiff).

COVELLO, J. The sole issue in this appeal is whether the plaintiff, a retired, heart-disabled police officer, is entitled to collect benefits under both a private retirement plan with his employer and General Statutes § 7-433c,[1] even though the combined payment would

[1] "[General Statutes (Rev. to 1975)] Sec. 7-433c. BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor

exceed the maximum salary being paid to active patrol officers. The trial court held that the plaintiff could collect both benefits and the defendants have appealed.[2] We find no error.

The parties stipulated to the following facts. Prior to December 13, 1975, the defendant city of Bridgeport employed the plaintiff as a regular member of its paid police department. At the time of his entry into service, the plaintiff submitted to a physical examination which failed to reveal evidence of heart disease or hypertension. On December 13, 1975, while off duty, the plaintiff suffered a heart attack, which disabled him from performing his duties as a patrol officer. The plaintiff retired on July 10, 1976. In November, 1976, the plaintiff notified the named defendant of his claim for

benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

Public Acts 1977, No. 77-520, § 1, amended § 7-433c by adding the following language before the final sentence of the provision: "The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability."

[2] The defendants in the original action were: the city of Bridgeport; Bridgeport Fire Department Employees Union, Local 834; President, Bridgeport Fire Department Employees Union, Local 834; Comptroller, city of Bridgeport; Treasurer, city of Bridgeport; President, Common Council of the city of Bridgeport; Mayor, city of Bridgeport; Bridgeport Police Department Employees Union, Local 1159; and its president. All but the last two defendants appealed from the trial court's judgment.

benefits under § 7-433c. On December 21, 1978, the workers' compensation commissioner awarded benefits to the plaintiff in accordance with that statute.

The stipulation further reveals that the plaintiff was a beneficiary of a contributory pension plan established pursuant to a collective bargaining agreement between the defendant city and the Bridgeport police union (private pension agreement). This agreement was not promulgated under the Municipal Employees' Retirement Act, General Statutes § 7-425 et seq., and therefore is not subject to the limitations as to amounts set forth in that act.

The plaintiff would receive, if he collected both the § 7-433c benefits and the private pension benefits, an amount that would exceed the salary being paid to regular patrol officers. The city has refused to pay benefits under both § 7-433c and the private pension agreement to the extent that the combined total exceeds the salary being paid to active patrol officers.

General Statutes § 7-433c entitles a qualified, hypertensive or heart-disabled firefighter or police officer to receive compensation and medical care equivalent to that available under chapter 568 of the General Statutes, the Workers' Compensation Act. Further, the officer or firefighter may recover the same retirement or survivor benefits from "the municipal or state retirement system under which he is covered . . . which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment." General Statutes (Rev. to 1975) § 7-433c.

Section 7-433c was enacted "for the purpose of placing policemen who die or are disabled as a result of hypertension or heart disease in the same position vis-a-vis compensation benefits as policemen who die or

are disabled as a result of service related injuries." *Pyne* v. *New Haven,* 177 Conn. 456, 460–61, 418 A.2d 899 (1979); see also *Maciejewski* v. *West Hartford,* 194 Conn. 139, 144, 480 A.2d 519 (1984).

No limitation existed on the amount of benefits available under § 7-433c until 1977 when the legislature enacted amendments to both § 7-433b and § 7-433c. The amendment to § 7-433b provided that "the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under Section 7-433c shall be adjusted so that the total of such cumulative payments . . . shall not exceed one hundred per cent" of the compensation being paid to active department members in the same position as that held by the retiree on his retirement. Public Acts 1977, No. 77-520, § 2.

In concluding that the plaintiff was entitled to full benefits under both § 7-433c and the private pension agreement, the trial court reasoned that neither § 7-433c as it read "at the time of the vesting of the plaintiff's rights," nor the private pension agreement provided for a setoff or limitation on the amount of benefits.[3]

The defendants, relying on *Pyne* v. *New Haven,* supra, 462, contend that the law in effect at the time of the plaintiff's compensation award, December 21, 1978, rather than the law in effect on the date of his heart attack, December 13, 1975, or retirement, July 10, 1976, is determinative. They argue, therefore, that the limitation on § 7-433c benefits as mandated by the amendment to § 7-433b, effective July 5, 1977, is applicable. According to that amendment the benefits paid under the private pension agreement must be reduced

---

[3] The trial court did not further articulate the date on which the plaintiff's rights accrued, but inferentially concluded that this was prior to the effective date of the amendment to General Statutes § 7-433b.

so as not to exceed the 100 percent limit. We conclude, however, that the 1977 amendment is inapplicable to this case.

In *Farmer* v. *Bieber-Goodman Corporation*, 118 Conn. 299, 301, 172 A. 95 (1934), which considered compensation for an occupational disease, we explained that "[t]he law to be applied is that in effect when the plaintiff's right to compensation arose, that is, when a compensable incapacity occurred." See also *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 709, 156 A. 802 (1931). A similar rule applies in workers' compensation cases, when the substantive rights and obligations of the parties are at issue. See *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 649, 363 A.2d 1085 (1975). While acknowledging that § 7-433c "is neither a 'workmen's compensation law' nor 'occupational disease law' "; *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 674, 425 A.2d 131 (1979); we have held that officers qualified under § 7-433c are eligible to receive benefits "in the same manner" as that provided under the Workers' Compensation Act. *Maciejewski* v. *West Hartford*, supra, 146; see General Statutes § 7-433c. A logical construction of the phrase "in the same manner" requires a consistent application of relevant laws in order to achieve a uniform treatment of claims. Applying the law in effect on the date of the compensation award could lead to inconsistent results, as the total time required to complete similar administrative proceedings can vary considerably.

In the present case, the plaintiff's right to compensation and medical benefits under § 7-433c arose on December 13, 1975, the date on which he suffered the heart attack. The plaintiff retired on July 10, 1976. His rights to retirement benefits under the private pension agreement, therefore, arose on that date. It was on the date of his retirement, when the cumulative payments under § 7-433c and his pension exceeded the salary paid

to active patrol officers, that the problem dealt with in the 1977 amendment to the statute arose. We conclude that the date to be used in determining the statutory provisions applicable to the plaintiff's claim is his retirement date. Since the plaintiff's rights accrued and were fixed nearly one full year before the amendment to § 7-433b took effect on July 5, 1977, the 100 percent limitation created by that amendment is inapplicable to the determination of his benefits. To the extent that *Pyne* v. *New Haven,* supra, 462, indicates a contrary result, we herewith modify it.

The defendants contend that even if the date of the compensation award is not controlling, and, therefore, the amendment to § 7-433b is inapplicable, we should nevertheless impose a 100 percent limitation on the plaintiff's benefits. They argue that the amendment to § 7-433b simply *clarified* the legislative intent underlying the original heart and hypertension statute. The legislative history of the amendment, however, supports a contrary conclusion. Legislators in both the House and the Senate recognized that under the original heart and hypertension statute, a person who suffered a heart attack could, in some cases, receive a greater amount of compensation than if he were actually working. Public Acts 1977, No. 77-520, was intended to alleviate this problem by placing a 100 percent cap on the benefits which are available under § 7-433c. See 20 S. Proc., Pt. 8, 1977 Sess., p. 3363; 20 H.R. Proc., Pt. 5, 1977 Sess., pp. 1816–17, and Pt. 14, p. 6049.[4] It is thus clear that the 1977 amendment was intended to create a substantive change in the law.

---

[4] Representative Samuel Gejdenson, for example, explained the purpose of the bill as follows: "What the bill does is put a cap on [the] amount of money an individual can seek through Heart and Hypertension, so that it does not exceed over 100 percent. . . . In some cases it was found that through Heart and Hypertension and retirement plan, an individual could receive more money going out on Heart and Hypertension than when he

The defendants also assert that the plaintiff should be precluded from recovering both benefits because the purpose of § 7-433c "is to provide protection against wage loss" and not to grant certain police officers an unexpected windfall. See *Middletown* v. *Local 1073*, 1 Conn. App. 58, 62, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). In addition, the intent of the legislature in enacting § 7-433c, they point out, was to place qualified police officers "who die or are disabled as a result of hypertension or heart disease in the same position vis-a-vis compensation benefits as policemen who die or are disabled as a result of service related injuries" (i.e., officers entitled to collect workers' compensation benefits). *Pyne* v. *New Haven,* supra, 460–61; see also *Maciejewski* v. *West Hartford,* supra, 144.

The plaintiff's collection of benefits under both § 7-433c and the private pension agreement is not inconsistent with these purposes. In *Grogan* v. *New Britain,* 175 Conn. 174, 181–82, 397 A.2d 97 (1978), a workers' compensation case, we held that a police officer who sustained a back injury in the course of his employment could collect both workers' compensation benefits and retirement benefits under the city's charter. If one who suffers a heart attack is to be placed in the same position vis-a-vis compensation benefits as one who sustains a service related injury and is entitled to workers' compensation benefits; see *Pyne* v. *New Haven,* supra; then the plaintiff in the present case should be allowed to collect both the statutory benefits and the municipal pension benefits, as did the plaintiff in *Grogan* whose injuries were service related.

Finally, the defendants submit that the holdings in *Middletown* v. *Local 1073,* supra, 66, and *Maciejewski*

was actually working." 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1816; see also 20 S. Proc., Pt. 8, 1977 Sess., p. 3363, comments of Senator James J. Murphy, Jr.

v. *West Hartford,* supra, 152, support their claim to a limitation on the combined benefits. These cases, however, are readily distinguishable. The municipal ordinance which authorized payment of survivor benefits in *Middletown* specifically provided that workers' compensation benefits had to be *deducted* from concurrent payments under the ordinance. *Middletown* v. *Local 1073,* supra, 60. In *Maciejewski,* the municipal pension plan mandated a 75 percent limitation on benefits paid. *Maciejewski* v. *West Hartford,* supra, 143. The pension agreement in the present case contains no such limitation or setoff provisions.

From the foregoing analysis, it is clear that the trial court correctly allowed the plaintiff to collect the dual benefits. Nothing either in the private pension agreement, or in § 7-433c as it existed at the time of the plaintiff's retirement, precludes his collection of the full statutory benefits and pension benefits.

There is no error.

In this opinion the other justices concurred.