STEPHEN FELIA *v.* TOWN OF WESTPORT
(13873)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued February 8—decision released March 13, 1990

*Michael S. Lynch,* for the appellant (defendant).

*Gerald F. Stevens,* with whom was *Kristin Dorney,* for the appellee (plaintiff).

PETERS, C. J. This appeal concerns the construction of that portion of General Statutes § 7-433c,[1] the Heart

[1] General Statutes § 7-433c provides: "BENEFITS FOR POLICEMEN OR FIRE-MEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of

and Hypertension Act, that entitles disabled members of municipal police and fire departments to receive "compensation and medical care in the same amount and the same manner as that provided under chapter 568," the Workers' Compensation Act. On the basis of stipulated facts, a workers' compensation commissioner determined that the plaintiff, Stephen Felia, was entitled to an award for permanent partial impairment of his cardiovascular system. The commissioner's determination was upheld by the compensation review division, which expressly rejected the contention of the defendant, the town of Westport, that § 7-433c precluded such an award. The defendant appealed to the Appellate Court and we transferred that appeal here pursuant to Practice Book § 4023. We find no error.

As stipulated, the plaintiff was a regular member of the paid municipal fire department of the defendant town of Westport, who had passed the requisite physical examination at the time of his employment. Because the plaintiff thereafter manifested symptoms of heart disease and hypertension, a compensation commissioner on April 29, 1985, awarded him benefits under § 7-433c and related medical expenses. Consequently, the plaintiff qualified for a disability retirement from the Westport fire department on September 1, 1985, and has received a disability pension since that time.

---

his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

A further medical examination, on April 21, 1986, found the plaintiff to have a 17 percent permanent impairment of his cardiovascular system. On this basis, which the defendant did not contest factually, the compensation commissioner ordered the payment of a supplemental award, under General Statutes § 31-308 (d), of "132.6 weeks of specific benefits at his compensation rate together with any appropriate adjustments and subject to lawful limitations." The total amount payable to the plaintiff, pursuant to this supplemental award and to his disability pension, does not exceed 100 percent of the weekly compensation being paid to comparable firefighters in the Westport fire department. See General Statutes § 7-433b (b).[2]

In its appeal to the compensation review division, the defendant contended that § 7-433c limits the scope of a plaintiff's compensation for cardiovascular impairment to the recovery of economic loss, and thus precludes, as a matter of law, an award of special benefits under § 31-308. The review division disagreed with this contention, which the defendant renews in its appeal to this court. We find no error.

The history of § 7-433c has often been recounted and needs no further exegesis. As presently enacted, the statute entitles municipal police and fire department personnel, who develop cardiovascular disease at some time subsequent to their initial employment, to recover appropriate benefits without a showing that they incurred the disease in the line of duty. The statute expressly refers to the provisions of chapter 568, the Workers' Compensation Act, as the procedural vehi-

---

[2] General Statutes § 7-433b (b) provides in relevant part that "the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c . . . shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement."

cle for the administration of § 7-433c benefits. *Morgan* v. *East Haven,* 208 Conn. 576, 580–81, 546 A.2d 243 (1988); *Bakelaar* v. *West Haven,* 193 Conn. 59, 67–68, 475 A.2d 283 (1984).

The question before us concerns the scope of the § 7-433c cross reference to chapter 568. The defendant does not contest the proposition that a worker who proves a causal connection between his cardiovascular disability and his assigned duties *is* entitled to special benefits in addition to pension rights. The defendant contends, however, that § 7-433c intended to confer a more limited recovery upon its beneficiaries. The relevant statutory language affords a § 7-433c claimant the right to ''receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such . . . disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment.''

In construing § 7-433c, our task is to discern the apparent intent of the legislature, first by an analysis of the relevant statutory language at issue and thereafter, in the event of any latent ambiguity, by an examination of the statute's legislative history and the purpose it was designed to serve. *State* v. *Grullon,* 212 Conn. 195, 199–200, 562 A.2d 481 (1989); *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 486, 547 A.2d 528 (1988); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). On its face, the language ''compensation . . . in the same amount and the same manner'' suggests that, once § 7-433c coverage is established, the measurement of the plaintiff's benefits under this statute is identical to the benefits that may be awarded to a plaintiff under chapter 568. We have regularly so held; *Collins* v. *West Haven,* 210 Conn. 423, 429–30, 555 A.2d 981 (1989); *Lambert* v.

*Bridgeport,* 204 Conn. 563, 566, 529 A.2d 184 (1987); *Maciejewski* v. *West Hartford,* 194 Conn. 139, 146, 480 A.2d 519 (1984); *Bakelaar* v. *West Haven,* supra, 68–69; as has the Appellate Court. *Lundgren* v. *Stratford,* 12 Conn. App. 138, 144, 530 A.2d 183 (1987); *Middletown* v. *Local 1703,* 1 Conn. App. 58, 61, 65, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). Such a construction of § 7-433c is consistent with its legislative history. See especially 20 H.R. Proc., Pt. 5, 1977 Sess., pp. 1816–17, remarks of Representative Samuel Gejdenson. The compensation review division's rejection of the defendant's claim of error thus finds considerable support in our existing law.

To counter this plausible construction of § 7-433c, the defendant relies on the phrase "economic loss" in the statute's preamble. The preamble notes the public interest in providing protection to municipal firefighters and police officers because of their occupational risk of developing cardiovascular disease. In light of these special occupational hazards, the preamble states the desirability of providing protection for such municipal employees "against economic loss resulting from disability or death caused by hypertension or heart disease." According to the defendant, the preamble's emphasis on "economic loss" is a limitation on the subsequent substantive provision, in § 7-433c, which describes the benefits it confers as "compensation . . . as provided under chapter 568." The defendant would have us read "compensation" as "compensation against economic loss" so as to exclude all special benefits under § 31-308.

There are a number of answers to this contention. On the particular facts of this case, the "special" benefits awarded to the plaintiff were based upon § 31-308 (d). In contrast to the specific benefits of § 31-308 (b), which relate weekly benefits to the impairment or loss of designated body parts, § 31-308 (d) con-

fers discretion on the commissioner to award "such compensation as he deems just for . . . the disabling effect of the loss of or loss of function of the organ involved and the necessity of the . . . complete functioning of the organ with respect to the entire body . . . ." In considering "the disabling effect" of this plaintiff's 17 percent cardiovascular impairment, the commissioner may take into account the plaintiff's inability to reenter the labor market, and so may indeed be providing compensation for economic loss. See J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) p. 119. The record does not disclose how the commissioner arrived at the amount of the plaintiff's § 31-308 (d) award. The defendant has not, however, challenged either the amount of the award or the manner of its calculation, and therefore has failed to establish a record for the contention that the award is unrelated to the plaintiff's economic loss.

Even if we were to overlook this inadequacy in the record, the defendant's contention would be unpersuasive. It bears emphasis that all of § 31-308 is denominated "compensation," the very term that the legislature chose as its referent for incorporating chapter 568 as the measure of the § 7-433c benefits for a heart or hypertension disability. Construing the two statutes conjointly, as we must, when they relate to the same subject matter; *In re Ralph M.,* 211 Conn. 289, 304–305, 559 A.2d 179 (1989); *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 575, 522 A.2d 763 (1987); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980); we conclude that the legislature intended "economic loss" to include a diminution of earning capacity, and authorized such a diminution to be measured by the appropriate compensatory benefits provided in chapter 568. The provision for a benefits "cap" in § 7-433b (b) further supports this conclusion because, absent access to special compensatory benefits to supplement a pension, a disabled

employee's total award would be unlikely to exceed the salary of his working counterpart.

The defendant maintains, however, that we came to a contrary conclusion in footnote 13 in *Morgan* v. *East Haven,* supra, 585.[3] We disagree. As the plaintiff notes, the issue in *Morgan* was whether, after the death of a § 7-433c plaintiff and his widow, their respective estates were entitled to receive the remaining weeks of compensation awarded for a 75 percent permanent cardiovascular impairment. Id., 582-83. Although we held that § 7-433c restricted coverage to the employee and his dependents, and hence did not authorize a recovery for the estates, our opinion was premised on the uncontested right of the employee himself, and of his widow, to recover precisely the kind of award that the defendant questions in this case. Id., 584–85 and n.10. Furthermore, our judgment in *Morgan* concurred in the construction of § 7-443c that the compensation review division had relied upon in denying recovery to the estates in that case. We conclude, in the present case as well, that the decision of the compensation review division is a reasonable construction of the relationship between § 7-433c and chapter 568 that warrants respect as the considered judgment of the governmental agency vested with primary authority for enforcing our workers' compensation statutes. See *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975).

There is no error.

In this opinion the other justices concurred.

---

[3] The footnote at issue states: "The other major type of economic loss is costs for medical care; see 2 F. Harper & F. James, The Law of Torts (1956) § 25.8, p. 1316; 22 Am. Jur. 2d, Damages § 1; which also are compensable under General Statutes § 7-433c. Loss of a body part, although compensable by money damages, is not an economic loss under § 7-433c." *Morgan* v. *East Haven,* 208 Conn. 576, 585 n.13, 546 A.2d 243 (1988).