ANTHONY COSTELLO, JR. *v.* TOWN OF FAIRFIELD
(13782)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued February 8—decision released March 13, 1990

*Donal C. Collimore,* assistant town attorney, for the appellant (defendant).

*Michael Sucoll,* for the appellee (plaintiff).

PETERS, C. J. This appeal concerns the relationship between various provisions of the Heart and Hypertension Act, General Statutes §§ 7-433c and 7-433b (b)[1]

---

[1] General Statutes § 7-433c provides: "BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of

which provide and limit the benefits available to disabled members of municipal police and fire departments. On the basis of stipulated facts, a workers' compensation commissioner determined that § 7-433c entitled the plaintiff, Anthony Costello, Jr., to an award of "specific indemnity" for his permanent partial cardiovascular disability, despite the ceiling on pension and

paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition

workers' compensation benefits prescribed by § 7-433b (b). Upon an appeal of this determination by the defendant, the town of Fairfield, the compensation review division affirmed the commissioner's finding and award. The defendant appealed to the Appellate Court and we transferred the appeal here pursuant to Practice Book § 4023. We find no error.

The commissioner made the following findings of fact, in accordance with the parties' stipulation. The plaintiff was a regular member of the police department of the defendant town, and had passed the required physical examination at the time of his employment. As of November 19, 1982, however, the plaintiff had a permanent partial disability of 30 to 35 percent of his cardiovascular system. The plaintiff nonetheless returned to work as a police officer from November 19, 1982, to October 1, 1984, when he retired. During his period of reemployment, the plaintiff received his regular salary as a police officer, but no compensation for his permanent partial disability.

The plaintiff received an original award of benefits under § 7-433c on April 14, 1983, that was reaffirmed on May 8, 1987. In the instant proceedings, the commissioner held that the plaintiff was entitled to a supplemental award of "specific indemnity" for the period of his reemployment, despite the provision in § 7-433b (b) that imposes limits on the total award that a § 7-433c

or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

General Statutes § 7-433b (b) provides in relevant part that "the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c . . . shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement."

beneficiary may receive. The defendant challenged this conclusion of law in its appeal to the compensation review division. The compensation review division affirmed the finding and award of the commissioner.

The defendant claims on appeal that the compensation review division erred because: (1) § 7-433c does not authorize an award of "specific indemnity" benefits; and (2) § 7-433b (b) imposes a ceiling on any award of benefits under § 7-433c. We decline, however, to consider the first claim, because the compensation review division expressly noted that the defendant had not preserved "any issue as to whether the trial commissioner had jurisdiction to award specific indemnity benefits under sec. 7-433c as a matter of law."[2] Only the defendant's second claim is properly before us.

It is uncontested that § 7-433b (b) imposes a ceiling on a disabled policeman's award of "specific indemnity" benefits under § 7-433c at the time of his retirement. The subsection provides, in relevant part, that "cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c . . . shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement." The defendant argues that this subsection imposes a ceiling even on special compensation that supplements a regular salary during a period of employment, while the plaintiff contends that the subsection limits special compensation only when it is awarded to supplement a retirement pension.

In order to evaluate these disparate constructions of § 7-433b (b), it is useful to clarify what is not at issue.

---

[2] The record before us in this case does not indicate the precise statutory basis for the commissioner's award of "specific indemnity benefits."

The plaintiff's cardiovascular disability entitles him to coverage under § 7-433c for the benefits therein conferred. In enacting § 7-433c, the legislature intended the measurement of a claimant's benefits to be identical to the benefits that may be awarded to a claimant under chapter 568, the Workers' Compensation Act. *Felia* v. *Westport,* 214 Conn. 181, 185–86, 571 A.2d 89 (1990), and cases cited therein. Accordingly, the use of the term "compensation" in § 7-443c, as a general matter, incorporates the compensation benefits provided in General Statutes § 31-308. Id., 187–88. Notwithstanding these general principles, in enacting § 7-433b (b), the legislature intended to limit the total payments to a retired municipal police officer to the amount that was being paid to his working counterpart. Id., 188; *Lambert* v. *Bridgeport,* 204 Conn. 563, 569, 529 A.2d 184 (1987).

The defendant argues that the benefits "cap" imposed by § 7-433b (b) includes all special indemnity benefits, regardless of the time period for which they are awarded, because subsection (b) expressly limits "the cumulative payments . . . for compensation *and* retirement or survivors benefits under section 7-433c" (emphasis added) to the weekly compensation of comparable police officers. The compensation review division was, indeed, mistaken when it described the ceiling on cumulative payments as limited to a claimant's retirement and survivor benefits. In our construction of § 7-433b (b), we strive to attach independent meaning to every phrase contained in a legislative enactment. *Rawling* v. *New Haven,* 206 Conn. 100, 112, 537 A.2d 439 (1988); *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985). It is, accordingly, significant that the legislature included "compensation" as a specific component to be considered in comparing the cumulative payments of a § 7-433c beneficiary and a healthy working police officer. In determining what the legislature intended to

encompass by "compensation" in § 7-433b, we are, furthermore, bound to search for a construction of that term that is consistent with its usage in § 7-433c, since both statutes relate to the same subject matter. *Felia* v. *Westport,* supra, 187–88, and cases therein cited. In *Felia* v. *Westport,* supra, 187–88, we concluded that "compensation" in § 7-433c includes special compensatory benefits, as provided in § 31-308. It follows that "compensation" in § 7-433b (b) also includes the "specific indemnity" that the plaintiff was awarded in this case.

The difficulty with the defendant's argument arises, however, upon further examination of the comparative standard that § 7-433b invokes to determine whether a § 7-433c beneficiary has exceeded the statutory ceiling imposed by the legislature. Subsection (b) might have compared such a beneficiary's payments with the salary actually paid to *any* comparable police or fire officer who was working without the handicap of a cardiovascular disability. Instead, the legislature chose a narrower basis for comparison: "the weekly compensation being paid . . . to members of such department in the same position which was held by such member *at the time of his death or retirement.*" (Emphasis added.) Because the Heart and Hypertension Act is remedial legislation, we should not ourselves enlarge upon the limitations it imposes on recovery. See *Kinney* v. *State,* 213 Conn. 54, 59, 566 A.2d 670 (1989); *Castro* v. *Viera,* 207 Conn. 420, 435, 541 A.2d 1216 (1988). The legislative history of § 7-433b supports a literal construction of its limitation, because it too refers to the inequity of providing greater heart and hypertension benefits for an individual when he was "going out . . . than when he was actually working." 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1816, remarks of Representative Samuel Gejdenson; see also 20 S. Proc., Pt. 8, 1977 Sess., p. 3363, remarks of Senator James J. Mur-

phy, Jr.[3] The compensation review division therefore correctly concluded that the plaintiff in this case was not barred from receiving a supplemental award of "specific indemnity" benefits.

There is no error.

In this opinion the other justices concurred.

---

[3] Representative Samuel Gejdenson, in explaining the purpose of Public Acts 1977, No. 77-520, § 2, later codified as General Statutes § 7-433b (b), stated that "[i]n some cases it was found that through Heart and Hypertension and retirement plan, an individual could receive more money going out on Heart and Hypertension than when he was actually working." 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1816. Senator James J. Murphy, Jr., echoed this sentiment, stating that "[u]nder some plans, between Workmen's Compensation and other programs that are available to these employees in municipalities, they receive, if they're out on disability, more than 100 percent. This puts a cap on it . . . ." 20 S. Proc., Pt. 8, 1977 Sess., p. 3363.