ROBERT CARRIERO *v.* BOROUGH
OF NAUGATUCK ET AL.
(SC 15610)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued November 5, 1997—officially released March 3, 1998

*Carlos A. Santos*, with whom, on the brief, was *Peter E. Mariano*, for the appellant (named defendant).

*David J. Morrissey*, for the appellee (plaintiff).

*Frank A. May* filed a brief for the city of Hartford et al. as amici curiae.

*Opinion*

BORDEN, J. The sole issue in this certified appeal is whether the "ceiling" imposed by General Statutes § 7-433b (b)[1] upon benefits awarded under what is commonly referred to as the Heart and Hypertension Act, General Statutes (Rev. to 1995) § 7-433c,[2] applies to

---

[1] General Statutes § 7-433b (b) provides: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system, the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total of such cumulative payments shall not exceed said one hundred per cent of the weekly compensation."

[2] General Statutes (Rev. to 1995) § 7-433c provides in relevant part: "Benefits for policemen or firemen disabled or dead as a result of hypertension or heart disease. (a) In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusually high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or

cumulative payments to a retired police officer composed of permanent partial disability compensation awarded under § 7-433c and a retirement pension based solely on the number of years of service. Following our grant of certification,[3] the named defendant, the borough of Naugatuck,[4] appeals from the judgment of the Appellate Court affirming the decision of the compensation review board (board). *Carriero* v. *Nauga-*

heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

Although the legislature amended subsection (a) of § 7-433c in 1996; see Public Acts 1996, No. 96-231, § 1 (a); the changes are not relevant to this appeal.

[3] We granted the named defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that, under the circumstances of this case, the provisions of General Statutes § 7-433b (b) did not apply to the plaintiff's pension benefits?" *Carriero* v. *Naugatuck*, 240 Conn. 907, 688 A.2d 334 (1997).

[4] The second injury fund, which was also named as a defendant, has not participated in this appeal. Hereafter, we refer to the borough of Naugatuck as the defendant.

*tuck*, 43 Conn. App. 773, 778, 685 A.2d 1141 (1996). The board had affirmed the decision of the workers' compensation commissioner for the fifth district (commissioner) ordering the defendant to pay the plaintiff, Robert Carriero, a retired police officer who previously had been employed by the defendant, the full measure of permanent partial disability benefits that he had been awarded pursuant to § 7-433c, notwithstanding that he had already retired and had begun collecting a retirement pension based on the number of years of his service, and notwithstanding that the total cumulative payments from these two sources exceeded the ceiling imposed by § 7-433b (b).

The ceiling on benefits imposed by § 7-433b (b) provides that "the cumulative payments . . . for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement . . . ." The Appellate Court reasoned that this ceiling applies only when both the disability compensation benefits and the retirement benefits have been awarded pursuant to § 7-433c. The defendant claims that the ceiling applies whenever any portion of the retiree's compensation has been awarded under § 7-433c. We agree with the defendant and, accordingly, we reverse the judgment of the Appellate Court.

The relevant facts and procedural history are undisputed and are set forth in the opinion of the Appellate Court. "The commissioner found the following facts. The plaintiff is a retired Naugatuck police officer. In January, 1991, in accordance with its contract with the police union, [the defendant] awarded the plaintiff a

pension based solely on his thirty years of service with its police department. This pension was unrelated to his [subsequent heart and] hypertension claim under § 7-433c, and his disability was not an issue or a consideration in [the defendant's] decision to grant the pension.

"[Through a voluntary agreement between the plaintiff and the defendant] on March 1, 1991, the plaintiff was awarded permanent partial disability benefits because of a 42.5 percent disability of his heart. These disability benefits were awarded pursuant to § 7-433c." *Carriero* v. *Naugatuck*, supra, 43 Conn. App. 774–75.

Accounting for the full measure of both the pension and the disability compensation, the cumulative weekly payments from the defendant to the plaintiff would have exceeded the ceiling provided by § 7-433b (b) to cumulative retirement and disability compensation benefits to which it applies. Because the defendant considered the ceiling to apply to the payments that it was making to the plaintiff, the defendant limited its disability and retirement payments accordingly.

The plaintiff sought an order from the commissioner requiring the full payment of both his § 7-433c disability benefits and his retirement pension. The commissioner granted that order. The defendant appealed to the board, which affirmed the commissioner's decision. The defendant appealed to the Appellate Court, which affirmed the board's decision. This certified appeal followed.

The defendant claims that the Appellate Court improperly concluded that the § 7-433b (b) ceiling does not apply in this case. The defendant argues that the language of § 7-433b (b) delineating precisely the payments that the subsection limits, namely, "cumulative payments . . . for compensation and retirement . . . benefits under section 7-433c," applies to cumulative

payments of disability compensation and retirement pension benefits when *any* portion of those payments has been awarded under § 7-433c. We agree.

We first note that, in *Lambert* v. *Bridgeport,* 204 Conn. 563, 567–68, 529 A.2d 184 (1987), we addressed the precise question involved in this appeal, albeit in dictum. The facts in *Lambert* were virtually identical to the facts here. The plaintiff, a retired Bridgeport police officer, had suffered an off-duty heart attack. Subsequently, he retired and began to collect retirement benefits through a contributory pension plan established pursuant to a collective bargaining agreement between the city and the police union. The pension benefits were not paid pursuant to § 7-433c. Several months after his retirement, he submitted a claim with the workers' compensation commissioner for disability compensation benefits under § 7-433c. The commissioner awarded those benefits, which, in combination with the plaintiff's nondisability retirement pension, exceeded the salary paid to working officers in comparable positions. Citing the then newly adopted § 7-433b (b), the city refused to pay combined benefits beyond the salary being paid to active officers, and the plaintiff brought an action for full payment of the combined benefits. Id., 565–69.

On appeal, this court ruled that § 7-433b (b) did not apply to the case because the plaintiff's rights to both the pension and the heart and hypertension compensation payments had accrued prior to July, 1977, the effective date of No. 77-520 of the 1977 Public Acts, which had created § 7-433b (b). Id., 568–69. Before reaching that conclusion, however, we stated that "*[a]ccording to [§ 7-433b (b)] the benefits paid under the private pension agreement must be reduced so as not to exceed the 100 percent limit*"; (emphasis added) id., 567–68; suggesting that § 7-433b (b) applied to the cumulative

payments of disability benefits paid pursuant to § 7-433c, and a retirement pension not paid pursuant to § 7-433c. We now conclude that, as the dictum in *Lambert* indicated, the § 7-433b (b) ceiling applies to the total payments composed of heart and hypertension disability payments and retirement pension payments not related to § 7-433c, and we hold accordingly.

With this background in mind, we turn to the interpretation of § 7-433b (b).[5] "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

---

[5] In reaching the conclusion that the ceiling provided by § 7-433b (b) does not apply to the payments involved in this case, the Appellate Court gave substantial deference to the decision of the board, reasoning that it owed such "deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Carriero* v. *Naugatuck*, supra, 43 Conn. App. 777. This reliance upon the interpretation of the board was misplaced.

Although "[o]rdinarily, [a] court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . [c]ases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in [reviewing agency decisions] . . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 645, 687 A.2d 134 (1997). Because review of the board's decision in the present case involved solely the question of the

Before scrutinizing the language of § 7-433b (b), it is helpful to review § 7-433c. Section 7-433c (a) provides in relevant part that "in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department . . . suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall" be eligible to receive two categories of "heart and hypertension" benefits. Specifically, (1) "from his municipal employer [he shall be eligible to receive] compensation and medical care in the same amount and [in] the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and [2] from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall [be eligible to] receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. . . ." General Statutes (Rev. to 1995) § 7-433c (a).

These § 7-433c payments constitute "special compensation, or even an outright bonus, to qualifying policemen and firemen." *Grover* v. *Manchester*, 168 Conn. 84, 88, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975). "[T]he outright bonus provided by the statute is that the claimant is not

proper construction of § 7-433b (b), a pure question of law, and because the board's construction of that section has not previously been subject to judicial scrutiny, the board's decision was not entitled to any special deference.

required to prove that the heart disease is causally connected to his employment, which he would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act." *Revoir* v. *New Britain*, 2 Conn. App. 255, 260, 477 A.2d 161 (1984). Thus, although "[the Workers' Compensation Act] is used . . . as a 'procedural avenue' for administration of the benefits under § 7-433c"; *Morgan* v. *East Haven*, 208 Conn. 576, 581, 546 A.2d 243 (1988); an award under § 7-433c is not a workers' compensation award. *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 673–74, 425 A.2d 131 (1979).[6]

Section 7-433b (b) imposes a ceiling on cumulative payments "under section 7-433c . . . ." The language expressing the limitation provides that "cumulative payments . . . for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments . . . shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by [the retired or deceased police officer or firefighter] at the time of his death or retirement. . . ." General Statutes § 7-433b (b). When this language is examined in isolation, the plaintiff's argument, namely, that the ceiling should apply only when both categories constituting the cumulative payments—disability compensation and retirement or survivors benefits—consist of awards under § 7-433c, "has a

---

[6] In *Plainville* v. *Travelers Indemnity Co.*, supra, 178 Conn. 674, we concluded that "§ 7-433c is neither a 'work[ers'] compensation law' nor 'occupational disease law' within the meaning of the policy provisions of the insurance contract" at issue in that case. We reached that conclusion because of the "absence of a requirement that a heart ailment must be causally connected to the claimant's employment . . . ." Id., 673. Although that case involved construction of a contract, it analyzed § 7-433c as a matter of statutory interpretation and, therefore, its holding is appropriately applied in the present case.

superficial textual appeal . . . ." *United Illuminating Co.* v. *New Haven,* supra, 240 Conn. 455. When that language is read in the context of § 7-433b (b) as a whole, however, strong indications emerge that the legislature intended a broader application of the ceiling.

First, if the ceiling applied only when both disability compensation and retirement or survivors benefits were paid pursuant to § 7-433c, then the portions of the text of § 7-433b (b) that immediately precede and immediately follow the language of limitation would be superfluous. Immediately preceding the language of limitation in § 7-433b (b) is the following sentence: "Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system . . . ." Immediately following the language of limitation in § 7-433b (b) is the following sentence: "Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total of such cumulative payments shall not exceed said one hundred per cent of the weekly compensation." These passages clarify the scope of the limitation imposed by the section. If the ceiling applied only to cumulative payments composed of disability compensation benefits and retirement benefits that had been awarded under § 7-433c, these passages would be superfluous, because the complete mandate of § 7-433b (b) would be expressed in the plain words of the phrase, "the cumulative payments . . . for compensation and retirement or survivors benefits under section 7-433c shall be adjusted . . . ." There would be no reason for § 7-433b (b) to indicate that the ceiling applies "[n]otwithstanding the provisions" of certain other potential

sources of retirement benefits, and the statute's indication that the ceiling applies when part of the cumulative payments consists of money paid out of a municipality's general fund, unconnected to any claim under § 7-433c, would be meaningless.

In general, "[w]e do not . . . read legislative language in such a way as to render it superfluous." *United Illuminating Co.* v. *New Haven,* supra, 240 Conn. 439. We have emphasized this point in particular with regard to § 7-433b (b), stating, "[i]n our construction of § 7-433b (b), we strive to attach independent meaning to every phrase contained in [the] legislative enactment." *Costello* v. *Fairfield,* 214 Conn. 189, 193, 571 A.2d 93 (1990). Therefore, the fact that these passages would be rendered meaningless if the ceiling was interpreted to apply only when both disability compensation and retirement or survivors benefits were paid pursuant to § 7-433c, as the plaintiff urges, suggests that such an interpretation would be incorrect. In contrast, the passages clarify the scope of the statutory ceiling if the defendant's interpretation, namely, that the statutory ceiling applies to the cumulation of any § 7-433c benefits and other, unrelated retirement benefits, is adopted.

The purpose underlying § 7-433b (b) points in the same direction. The general purpose of § 7-433b (b) is "to limit the total payments to a retired municipal police officer to the amount that was being paid to his working counterpart." Id. Our conclusion regarding the meaning of the ceiling is consistent with that purpose. By contrast, however, the construction of the ceiling advocated by the plaintiff, which would allow a retiring police officer or firefighter collecting § 7-433c benefits to avoid the ceiling whenever he also qualifies for a nondisability pension, is inconsistent with that general purpose.

The legislative history of § 7-433b (b) further buttresses our conclusion that the ceiling applies to the

facts of the present case. For example, Senator James J. Murphy, Jr., the sponsor of the amendment that ultimately became No. 77-520 of the 1977 Public Acts, which included the provision that currently is codified at § 7-433b (b), commented: "Basically, what this [a]mendment does, Mr. President, the [a]mendment [that] would become the [b]ill, is put a cap of 100 percent on the benefits that would be available. Under some plans, between Work[ers'] Compensation and *other programs that are available to these employees in municipalities*, they receive, if they're out on disability, more than 100 percent. This puts a cap on it . . . ." (Emphasis added.) 20 S. Proc., Pt. 8, 1977 Sess., p. 3363. Likewise, Representative Samuel Gejdenson, the primary sponsor of the legislation in the House, commented: "What the bill does is put a cap on [the] amount of money an individual can seek through Heart and Hypertension, so that it does not exceed over 100 percent. . . . In some cases it was found that *through Heart and Hypertension and [a] retirement plan,* an individual could receive more money going out on Heart and Hypertension than when he was actually working." (Emphasis added.) 20 H.R. Proc., Pt. 5, 1977 Sess., p. 1816. These statements suggest that the legislators intended the statutory ceiling to apply to the cumulation of any § 7-433c benefits and other, unrelated retirement benefits.

The plaintiff claims that, if the ceiling is applied to the present case, there would be an inconsistency between § 7-433c and the Workers' Compensation Act. Specifically, he argues that a retiree *may* collect in excess of 100 percent of his former salary in the form of a combination of workers' compensation benefits and a nondisability pension, and that we should construe the § 7-433b (b) ceiling to be consistent with that statutorily permissible combination. We are unpersuaded.

The defendant does not challenge the plaintiff's assertion that there is no analogous ceiling applicable to workers' compensation benefits and service related pension payments, and we, therefore, assume that to be the case. That does not, however, undermine our conclusion that the statutory ceiling applies to the present matter.

Although we ordinarily read related statutes so as to form a coherent and rational whole, avoiding irrational distinctions; see, e.g., *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992) (" '[s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law' "); *Powers* v. *Ulichny*, 185 Conn. 145, 149, 440 A.2d 885 (1981) ("[w]e make every effort to construe a statutory scheme as a consistent whole"); that principle does not apply in the present matter in the fashion that the plaintiff urges. First, whether to impose a ceiling on a combination of benefits consisting of § 7-433c benefits and ordinary pension benefits, but not on a combination of benefits consisting of workers' compensation benefits and ordinary pension benefits, is a policy choice properly addressed by the legislature. Second, there are significant differences between workers' compensation benefits and § 7-433c benefits that may well have animated such a legislative distinction.

Although the Heart and Hypertension Act shares certain commonalities with the Workers' Compensation Act, the two statutes differ in important respects. As the Appellate Court has stated, "[an award pursuant to] General Statutes § 7-433c . . . *is* a work[ers'] compensation award in the sense that its benefits are payable and procedurally administered under the Work[ers'] Compensation Act"; (emphasis in original) *Middletown* v. *Local 1073*, 1 Conn. App. 58, 65–66, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984); but, "[it] is *not* a work[ers'] compensation award

because it requires no proof of eligibility or liability under the Work[ers'] Compensation Act." (Emphasis in original.) Id., 65. The proof of eligibility that a claimant must make under the Workers' Compensation Act is that he has sustained "injur[ies] . . . arising out of and in the course of his employment . . . ." General Statutes § 31-284 (a); see also *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240 A.2d 886 (1968) ("purpose of the work[ers'] compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault"). In contrast, the essential characteristic of § 7-433c is that it awards benefits to police or fire department personnel for certain cardiovascular ailments without requiring proof that such ailments "arose out of and in the course of . . . employment . . . ."

This fundamental distinction between the benefits payable under the two statutes provides a rational justification for the legislative choice to permit claimants to collect workers' compensation benefits, but not heart and hypertension benefits, and nondisability pension benefits, in excess of 100 percent of their salary. Workers' compensation benefits are *workers' compensation*; that is, because such benefits constitute payment for proven work related injuries or illness, they have, in effect, been *earned* by the beneficiary through work. The legislature may well have considered, therefore, that it is reasonable to permit a workers' compensation claimant to collect such benefits in full, even if the claimant is no longer an active employee, and even if such benefits, in addition to the claimant's retirement pension, exceed 100 percent of salary. Heart and hypertension benefits, however, cannot be said to constitute *compensation* in the same manner, because they are awarded without respect to causation by the claimant's employment. They constitute a legislative *bonus* to

police and fire department personnel.[7] *Grover* v. *Manchester*, supra, 168 Conn. 88–89. Thus, the legislature may have considered it to be justified to limit those benefits, in combination with the claimant's pension, to no more than 100 percent of his salary.[8]

Finally, the plaintiff argues that our determination of the present case should be controlled by application of the interpretive axiom that, in order to facilitate the accomplishment of the objectives of remedial legislation, the limitations on that legislation should be interpreted narrowly. It is true that this court has, in the past, found that axiom helpful in construing aspects of the Heart and Hypertension Act. See *Szudora* v. *Fairfield*, 214 Conn. 552, 559, 573 A.2d 1 (1990) ("[i]n light of the remedial nature of the Heart and Hypertension Act, this court should not impose greater constraints

---

[7] We recognize that the Heart and Hypertension Act is predicated upon the notion that cardiovascular risks, in general, are accentuated for fire and police department personnel. In this sense, although awards pursuant to the act cannot be characterized as compensation, as workers' compensation benefits can, we recognize that they are *work related.*

[8] The plaintiff also argues that applying the statutory ceiling of § 7-433b (b) in the circumstances of the present case would be inconsistent with our decision in *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 420 A.2d 905 (1979), construing General Statutes (Rev. to 1979) § 7-436 (a), which provided for a deduction from an employee's retirement allowance under the Connecticut Municipal Employees' Retirement Fund of workers' compensation benefits. In *LaProvidenza* v. *State Employees' Retirement Commission,* supra, 26, we were called upon to decide whether the phrase " 'such allowance' " in the sentence " '[a]ny amount or amounts received under the work[ers'] compensation act shall be deducted from such allowance,' " referred to any retirement allowance or only a disability retirement allowance. We concluded that the provision required deduction of workers' compensation payments only from disability pensions, remarking that "[it would be] entirely another matter . . . to construe the statute as authorizing the deduction of work[ers'] compensation benefits from normal and voluntary age and service retirement payments when the work[ers'] compensation benefits are wholly unrelated to the cause of retirement." Id., 28. Because that case involved the question of whether to limit payments composed of a pension based upon age and years of service and *workers' compensation* benefits, the plaintiff's attempt to analogize from it to the present case, involving *heart and hypertension* benefits, is inapt.

on the benefits afforded to disabled police officers and firefighters than the legislature has chosen to adopt"); *Costello* v. *Fairfield*, supra, 214 Conn. 194 ("[b]ecause the Heart and Hypertension Act is remedial legislation, we should not ourselves enlarge upon the limitations it imposes on recovery"). Axioms such as this, "however, cannot displace the need for careful and thoughtful interpretation of [the statutory provisions at issue], nor can they displace the firm conclusions that such a process of interpretation yields. [Such] axioms, like all rules or canons of statutory construction, serve as important guidelines to the determination of legislative meaning. To permit them to displace the conclusions that careful interpretation yields, however, would be a disservice to the legislative process, as well as to the judicial exercise of interpreting legislative language based upon the premise that the legislature intends to enact reasonable public policies." *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 454–55. We therefore decline to allow the application of this interpretive principle in the present case to displace our conclusion, based upon careful interpretation of § 7-433b (b), that the ceiling therein is applicable to cumulative payments of disability compensation and retirement pension benefits when any portion of those payments has been awarded under § 7-433c.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the decision of the board and to remand the case to the board with direction to render a decision in favor of the defendant.

In this opinion the other justices concurred.