## Wade Reid vs. Hartford Fuel Supply Company et al.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued October 8th—decided December 3d, 1935.

*M. J. Blumenfeld,* for the appellants (defendants).

*Julius B. Schatz,* with whom was *Arthur D. Weinstein,* for the appellee (plaintiff).

HAINES, J. While employed by the named defendant, the claimant, a colored man about twenty-seven years of age, was accidentally injured by being buried in a pile of falling coal. The commissioner found that as a result of his injuries he was totally incapacitated for further gainful manual labor.

By mutual agreement filed with and accepted by the commissioner, he received compensation at the rate of $9.35 per week to February 12th, 1934. Upon claimant's motion a hearing was held by the commissioner, who awarded a continuance of the payments and also compensation for teeth lost by reason of the accident. Thereafter at hearings on February 1st, 11th and 18th, 1935, the commissioner found that the claimant was suffering from a total incapacity which was permanent, and awarded him $3573.14 by commuting his compensation for the remainder of the

compensation period into a lump sum, payable directly to him forthwith, through his attorney's office.

The respondents deny that the claimant is permanently incapacitated and contest the right of the commissioner to commute the compensation and direct its payment to the claimant. They seek many changes in the findings of the commissioner.

The medical testimony, both as to the condition of the claimant and as to the prognosis, was conflicting. There was ample testimony that the claimant was suffering from psychic shock, a nervous affection known medically as neuro-circulatory asthenia. As to its permanency there was a disagreement, some of the doctors holding that it was impossible to say how long the condition would continue, while at least one, the doctor who was called in to see the man the day of the accident and who had had him in his care from March 1st, 1934, until the hearing, gave it as his opinion that the man was permanently disabled. It was the right of the commissioner to accept this conclusion. Where medical testimony conflicts, the finding of the commissioner cannot be disturbed. *Kosik* v. *Manchester Construction Co.,* 106 Conn. 107, 136 Atl. 870; *Senzamici* v. *Waterbury Castings Co.,* 115 Conn. 446, 161 Atl. 860. A careful study of the record reveals evidence in support of all the material findings, with a single exception to which reference will hereafter be made.

It was found that the claimant was a vigorous man and in good physical condition notwithstanding the nervous affection, but that the latter rendered him unable to carry on any gainful physical labor; that his life expectancy was not shortened and it was reasonable to conclude that he would live far beyond the ten year compensation period. The commissioner found further that the claimant had had some experience in

handling coal and fruit and that "if he could secure for himself equipment with which to peddle coal or fruit, he would be able to supervise the business and by hiring a couple of men make more per week than he is now receiving as compensation." He is without funds, and has a wife, child and mother to support. In this situation the commissioner held that it was "necessary and just" that the remaining payments for the compensation period should be commuted into a single lump sum which was determined to be $3573.14, and ordered that it be paid to the claimant by check forthwith through the office of his counsel.

Our statute provides that compensations "shall be paid directly to the persons entitled to receive them unless the commissioner, for good reason, shall order payments to those entitled to act for such persons; and when he shall find it just or necessary, the commissioner may approve or direct the commutation, in whole or in part, of weekly compensations under the provisions of this chapter into monthly or quarterly payments, or into a single lump sum, which may be paid to the one . . . entitled to the compensation . . . . In any such case of commutation, a true equivalence of value shall be maintained, . . . and, when commutation shall be made into a single lump sum, the commissioner may direct that it be paid to any savings bank, trust company or life insurance company which is authorized to do business within this state, to be held in trust for the beneficiary or beneficiaries under the provisions of this chapter and paid in conformity with the provisions of this chapter." General Statutes, § 5253.

It is apparent from the foregoing that in cases of this character, a wide discretion is vested in the commissioner. The normal and usual method of paying compensation under the act is by weekly payments.

This protects alike the beneficiaries and the respondents. Where the case is one of incapacity, the right to these payments is dependent upon the continuance of the incapacity. By this method of payment the commissioner retains control of the case throughout the full compensation period, and can make such modifications of the original award as the change of circumstances requires, and thus justice is done to both the beneficiaries and the respondents. Compensation is commutable into a lump sum in those cases only in which the period of compensation is fixed and determined, so that a true equivalence in value of the payments can be brought about. In the case of a specific indemnity such as for the complete loss of an arm, the condition is necessarily permanent and the term of compensation unalterably fixed. In such cases the statute authorizes the commissioner to commute the compensation into a lump sum which represents the present worth of the entire compensation for the fixed period.

If upon adequate evidence the commissioner reaches the conclusion that an incapacity, total or partial, existing at the time of the award, will continue in the same degree for a fixed period, he may commute the award "when he shall find it just or necessary." His conclusions in this regard are subject to review and upon an appeal are to be weighed in the light of the subordinate facts found. The terms "just" and "necessary" appearing in the statute in the disjunctive, it might seem to follow that the commissioner could commute the compensation if he found that such action was either necessary or just, but such could hardly have been the intent of the Legislature. We look upon the word "necessary" as referring to the welfare of the claimant and his dependents and meaning reasonably necessary thereto; while the word "just" must

obviously refer to them and to the respondents as well. Not only do we thus interpret the meaning of the statute in using these terms, but we do not read them as designed to furnish two separate and distinct grounds as a basis for commutation. It cannot be held that the Legislature intended to authorize commutation in a case where though it was reasonably necessary to the welfare of the claimant and his dependents it was, at the same time, unjust to the respondents. Nor, on the other hand, should commutation be decreed, though just to the respondents, if it was also found that such action would not redound to the welfare of the claimant and his dependents. In brief, we hold the statute to confer upon the commissioner authority to commute a compensation award in those cases only where it is reasonably necessary for the welfare of the claimant and his dependents and at the same time is just to all parties interested in the award.

The underlying purpose of the Compensation Act is to provide for the workman and those dependent upon him, to the exclusion of his estate, his creditors and any other persons. *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 299, 135 Atl. 574; *Jackson* v. *Berlin Construction Co.*, 93 Conn. 155, 157, 105 Atl. 326. To determine whether commutation is reasonably necessary, for the welfare of the claimant and his dependents, and at the same time just, opens a wide field for consideration. Manifestly it would not be for their welfare to turn over $3500 in a lump sum to a claimant who was incapable of properly applying it to his own and his dependents' protection. To do so would subject the fund to possible early loss in whole or in part and result in some cases in making these beneficiaries a public charge, thus setting at naught the purpose of the act. It follows that such a direct payment can only be justified by convincing evidence that the fund

will be conserved and applied by the claimant as intended by the statute.

In the present case, in addition to the recited facts as to this claimant, it was further found that he "has no particularly great mentality and apparently is fit only for the work which he was doing at the time of the injury, that is laboring in a coal yard, being, as he is, without funds." The commissioner also says: "We do not believe he has sufficient mentality to be controlled by a psychiatrist" and "we hesitate to believe that through mental suggestion this man may be pulled out of the plight in which the accident has placed him." The evidence upon which the commissioner found that the claimant had had some experience in the coal and fruit business is very meager and we find no evidence whatever to support the further finding that he could hire help and make more than his present compensation by peddling fruit and coal; nor can it be assumed that the commissioner himself had such practical knowledge and experience of that business as to permit that conclusion. It remains a matter of speculative opinion, and we cannot sustain the finding as thus made.

The commissioner concluded that "in view of the low compensation rate, lump sum settlement seems to be the only practical solution of the claimant's problem." The soundness of this conclusion depended upon his finding that the claimant could earn more than his weekly compensation by going into the business of peddling fruit and coal. Since we cannot sustain this finding, the conclusion lacks support. The award as made puts more than $3500 in cash into the hands of a man of low mentality, for his uncontrolled use. While it appears that this would enable him to go into the business of peddling fruit and coal, it does not appear that he would be under any compulsion to

do so. Being of low mentality, the risk of the loss of part or all of this compensation is obviously very great, in which case the protection which the compensation law intended to furnish him and the family depending upon him, would be gone.

There are some other features of the case disclosed by the record and worthy of consideration. Though the condition of the claimant be reasonably believed to be a permanent one, there is the ever present possibility, and in the opinion of several of the medical experts, the probability, that a complete or partial recovery may take place during the compensation period. In that event, the obligation of the respondents to pay compensation should cease or be correspondingly reduced.

For these reasons we are unable to sustain the commissioner in making the lump sum award as an act of reasonable discretion.

There is error; the cause is remanded to the Superior Court with direction to sustain the appeal and return the case to the commissioner for an award in conformity to this opinion.

In this opinion the other judges concurred.