******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VICTOR DIAZ *v.* CITY OF BRIDGEPORT ET AL.
## (AC 44104)

Prescott, Suarez and Vertefeuille, Js.

*Syllabus*

The defendant employer and its insurer appealed from the decision of the Compensation Review Board affirming the Workers' Compensation Commissioner's decision to grant the plaintiff's request to commute into a lump sum certain disability payments. The defendant had employed the plaintiff as a member of its municipal police department. While employed by the defendant, the plaintiff was diagnosed with hypertension. Subsequently, the commissioner found that the plaintiff's hypertension was a significant, contributing factor in the development of his coronary artery disease and, accordingly, that such disease was compensable under the Workers' Compensation Act (§ 31-275 et seq.). The plaintiff was later diagnosed with chronic kidney disease caused by his hypertension and, in a supplemental finding and award, was awarded 245 weeks of permanent partial impairment disability benefits. The plaintiff thereafter requested that the final 123 weeks of the award period be commuted into a lump sum. After a hearing, the commissioner concluded that the plaintiff had shown good cause for a commutation of his award pursuant to statute (§ 31-302), and, accordingly, granted the plaintiff's request for a commutation of the benefits due to him for weeks 123 through 245 of his award. The defendant appealed to the board, claiming, inter alia, that the commissioner improperly applied § 31-302 by ordering a commutation of the back end of the award without also awarding the defendant a moratorium of payment of benefits for the front end of the award. The board affirmed the order of the commissioner, and this appeal followed. *Held*:

1. The defendant could not prevail on its claim that the board improperly affirmed the commissioner's order granting the plaintiff's request for a commutation of the partial disability payments due to him for weeks 123 through 245 of his award, without instituting a moratorium against payment of the benefits due for the first 122 weeks of his award: although the defendant argued that a lump-sum payment pursuant to a commutation order should be included in determining whether a payment exceeds the maximum weekly compensation under the applicable statute (§ 31-309) for workers' compensation benefits, this interpretation was inconsistent with the purpose of the commutation statute and, without reference to the lump-sum payment pursuant to the commutation, the plaintiff's award did not exceed the maximum weekly compensation under § 31-309.

2. The defendant's claim that the board erred in not concluding that the commissioner's commutation order violated the cap on heart and hypertension benefits pursuant to statute (§ 7-433b) was unavailing: although the statutory cap applied in the present case because the plaintiff was receiving both a disability benefit pursuant to statute (§ 7-433c) and a retirement pension, the plaintiff's award complied with the statutory cap imposed by § 7-433b because the plaintiff's lump-sum payments pursuant to the commutation award are excluded and the amount of the plaintiff's weekly disability benefit coupled with his pension payment did not exceed the statutory guidelines.

3. The board correctly concluded that the commissioner's commutation order did not violate the principles of equity: contrary to the defendant's claim, there was no double recovery because, although one-half of the award was paid in weekly installments and the other half was paid as a onetime lump sum, the plaintiff did not receive anything in excess of the original award to which he was entitled and, thus, the fact that the plaintiff received the lump sum while simultaneously receiving weekly payments of the award did not constitute a double recovery; moreover, although the commutation order may have presented a budgetary challenge for the defendant, this court was not persuaded that the commissioner's decision to commute the award in the fashion requested by the plaintiff was improper.

Argued April 14—officially released November 9, 2021

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Fourth District granting the plaintiff's request to commute certain disability benefit payments due to him into a lump sum, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the defendants appealed to this court. *Affirmed.*

*Joseph J. Passaretti, Jr.*, with whom was *Amanda A. Hakala*, for the appellants (defendants).

*David J. Morrissey*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. In this workers' compensation matter, the defendant employer, the city of Bridgeport,[1] appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Fourth District (commissioner) of the Workers' Compensation Commission to grant the request of the plaintiff, Victor Diaz, to commute into a lump sum the permanent partial disability benefit payments due him for the final 123 weeks of an overall period of 245 weeks. On appeal, the defendant claims that the board improperly (1) affirmed the order of the commissioner granting the plaintiff's request without instituting a moratorium against payment of the plaintiff's first 122 weeks of permanent partial disability benefits, (2) concluded that the commissioner's commutation order does not violate the cap on heart and hypertension benefits pursuant to General Statutes § 7-433b (b), and (3) concluded that the commissioner's commutation order does not violate the principles of equity, including the prohibition against double recovery in the workers' compensation system. We affirm the decision of the board.

The following facts, as found by the commissioner or as are undisputed in the record, and procedural history are relevant to our resolution of this appeal. On and for some time prior to January 31, 1989, the defendant employed the plaintiff as a regular member of its municipal police department. Upon his entry into service, the plaintiff submitted to a preemployment physical examination, which failed to reveal evidence of heart disease or hypertension. On or about January 31, 1989, while still employed by the defendant, the plaintiff was diagnosed with hypertension. Pursuant to an initial finding and award dated October 20, 1993, the commissioner awarded the plaintiff a specific award equal to a 10 percent permanent impairment of the heart.

On June 20, 2001, the plaintiff retired as a result of unrelated orthopedic injuries. On May 17, 2007, the plaintiff was diagnosed with coronary artery disease. By a finding and award dated August 9, 2010, the commissioner found that the plaintiff's hypertension was a significant, contributing factor in the development of his coronary artery disease and, accordingly, that such disease also was compensable under the Workers' Compensation Act, General Statutes § 31-275 et. seq. Pursuant to this finding and award, the plaintiff had sustained a 17 percent permanent impairment of the heart due to hypertension and a 14 percent permanent impairment of the heart as a result of coronary artery disease. By March 16, 2018, according to a subsequent finding and award, the plaintiff's permanent impairment of the heart had increased to 47 percent.

On January 19, 2017, Paul Nussbaum, a nephrologist,

evaluated the plaintiff and determined that he suffered from chronic kidney disease. Nussbaum examined the plaintiff again on February 5, 2018, and determined that the plaintiff had a 70 percent permanent impairment of the bilateral kidneys caused by his hypertension. On the basis of this determination, on January 30, 2019, in a supplemental finding and award, the plaintiff was awarded 245 weeks of permanent partial impairment disability benefits at the weekly compensation rate of $551.13. The plaintiff's maximum medical improvement date was February 20, 2019. The plaintiff subsequently requested that the partial disability benefit payments due him for the final 123 weeks of the 245 week award period be commuted into a lump sum.

On April 15, 2019, a formal hearing was held to determine whether a portion of the plaintiff's permanent partial disability award was eligible for commutation pursuant to General Statutes § 31-302. The plaintiff indicated that he was seeking a lump-sum payment to pay past due property taxes, to reduce his credit card debt, and to pay a portion of his children's student loans. At the formal hearing, the plaintiff testified that he understood that any commutation of the award would be subject to a 3 percent actuarial reduction and that, once the lump sum was paid, he would be deemed to have been paid his full weekly rate for the weeks covered by the commutation period. The defendant objected to the plaintiff's request.

Following the hearing, the commissioner concluded that the plaintiff had shown "good and sufficient cause" for a commutation of his permanent partial disability award. Accordingly, the commissioner granted the commutation for benefits due the plaintiff for weeks 123 through 245 of his award. The commissioner also ordered the defendant to continue paying the plaintiff's weekly permanent partial disability benefits until the expiration of week 122, at which time the entire award would be satisfied.[2] The defendant could then terminate its weekly payments without filing a notice to discontinue benefits. The commissioner instituted a moratorium against the payment of weekly benefits for the time period covered by the commutation.

The defendant filed an appeal to the board. On appeal, the defendant claimed that the commissioner improperly applied § 31-302 when she ordered a commutation of the "back end" of the plaintiff's award without also awarding the defendant a moratorium of payment of benefits for the "front end" of the award. (Internal quotation marks omitted.) The board affirmed the order of the commissioner. In its decision, the board addressed the specific claims that are before us on appeal. These claims include that the plaintiff's total payment exceeded the maximum weekly payment under § 31-302, violated the statutory cap imposed by § 7-433b (b), and breached the principle against double recovery. This appeal from

the decision of the board followed.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny." (Internal quotation marks omitted.) *Yelunin* v. *Royal Ride Transportation*, 121 Conn. App. 144, 148, 994 A.2d 305 (2010).

To the extent that the claims raised in the present appeal require us to interpret the Workers' Compensation Act, "we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [General Statutes] § 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under . . . [the Workers' Compensation Act]." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277–78, 8 A.3d 1093 (2010).

We must also set forth the legal principles common to the defendant's claims. "[Section] 7-433c entitles a qualified, hypertensive or heart-disabled firefighter or police officer to receive compensation and medical care equivalent to that available under . . . the Workers' Compensation Act." *Lambert* v. *Bridgeport*, 204 Conn. 563, 566, 529 A.2d 184 (1987). Subsection (a) of § 7-433c provides in relevant part that, "in the event . . . a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under [the Workers' Compensation Act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . ." General Statutes § 7-433c (a).

"The benefits provided under § 7-433c are . . . payable and administered under the Workers' Compensation Act, contained in chapter 568 of the General Statutes, and the type and amount of benefits available pursuant to § 7-433c are the same as those under the Workers' Compensation Act . . . . The monetary benefits received under § 7-433c are the same as those available to anyone with similar disabilities who receives workers' compensation benefits under chapter 568; that is, one would not receive additional compensation simply by receiving benefits under § 7-433c rather than under chapter 568." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 752, 945 A.2d 936 (2008).

I

We first address the defendant's claim that the board improperly affirmed the order of the commissioner granting the plaintiff's request for a commutation of partial disability payments due the plaintiff for weeks 123 through 245 of his award, without instituting a moratorium against payment of the benefits due the plaintiff for the first 122 weeks. The defendant argues that the plaintiff's receipt of the lump-sum payment while simultaneously collecting the weekly benefit results in an award that exceeds the maximum weekly compensation under the Workers' Compensation Act. Because the plaintiff's weekly compensation rate does not, in and of itself, exceed the maximum weekly compensation under General Statutes § 31-309 (a), inherent in the defendant's argument is the notion that a lump-sum payment pursuant to a commutation order should be included in determining whether a weekly payment exceeds the maximum weekly compensation under the Workers' Compensation Act. We disagree.

To resolve the defendant's claim, we must interpret the language of § 31-309 (a). Our review, therefore, is plenary, and we apply established principles of statutory construction. See *Rutter* v. *Janis*, 334 Conn. 722, 730, 224 A.3d 525 (2020). Under General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . Furthermore, [i]t is well established that, in resolving issues of statutory construction under the act, we are mindful that the

act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purpose of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." (Citation omitted; internal quotation marks omitted.) *Balloli* v. *New Haven Police Dept.*, 324 Conn. 14, 18–19, 151 A.3d 367 (2016).

We interpret § 31-309 (a) to establish a maximum weekly compensation for workers' compensation benefits. That statute provides in relevant part that "the weekly compensation received by an injured employee under the provisions of this chapter shall in no case be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of all workers in the state . . . ."[3] General Statutes § 31-309 (a). Section 31-302, however, expressly authorizes an alternative to weekly compensation, permitting the commutation of weekly compensation into monthly or quarterly payments or into a lump sum. Specifically, § 31-302 provides in relevant part: "Compensation payable under this chapter shall be paid at the particular times in the week and in the manner the commissioner may order . . . except that when the commissioner finds it just or necessary, the commissioner may approve or direct the commutation, in whole or in part, of weekly compensation under the provisions of this chapter into monthly or quarterly payments, or into a single lump sum, which may be paid to the one then entitled to the compensation, and the commutation shall be binding upon all persons entitled to compensation for the injury in question."

Section 31-309 (a) limits a claimant's "weekly compensation . . . ." General Statutes § 31-309 (a). Affording this language its plain and unambiguous meaning, "weekly compensation" refers to compensation that a claimant is entitled to receive on a weekly basis. A lump-sum payment made pursuant to a commutation award, however, is not a weekly payment but, rather, a singular payment consisting of benefits that otherwise would have been paid to a claimant over the course of multiple weeks. Because of the nature of these types of payments, they will almost always exceed the established maximum weekly compensation that may be paid to a claimant. The defendant's interpretation of § 31-309 (a) is inconsistent with and undermines the purpose of the commutation statute and is, therefore, not a reasonable interpretation. Accordingly, we do not interpret § 31-309 (a) to encompass lump-sum payments.

In addition to the text of the statute itself, we must also consider the relationship of § 31-309 (a) to other

statutes. See General Statutes § 1-2z. As acknowledged by our Supreme Court, "[an award pursuant to] . . . § 7-433c . . . is a work[ers'] compensation award in the sense that its benefits are payable and procedurally administered under the Work[ers'] Compensation Act . . . ." (Emphasis omitted; internal quotation marks omitted.) *Carriero* v. *Naugatuck*, 243 Conn. 747, 759, 707 A.2d 706 (1998). Further, unless there is a rational justification to do otherwise, courts should construe statutes in such a manner as to "foster harmony" with related statutes, thereby resulting in a consistent body of law. (Internal quotation marks omitted.) *State* v. *Spears*, 234 Conn. 78, 91, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995); see also *Carriero* v. *Naugatuck*, supra, 759.

As we have explained, § 31-302, by its plain language, specifically authorizes lump-sum payments made pursuant to commutation awards. Section 31-302 also provides that an award may be commuted "in whole or in part . . . ." General Statutes § 31-302. The only reasonable way to interpret the statute's authorization of a commutation "in part" is to mean that a portion of an award may be paid as a lump sum. After a partial lump sum has been paid, the portion of the award that has not been commuted remains payable to the claimant in the form of weekly benefits. The fact that the legislature, in § 31-302, prescribed that such awards may represent the whole or part of weekly compensation benefits reflects that the legislature intended to permit an award to be made while a claimant was also receiving weekly benefits. Our interpretation of § 31-309 (a) allows both §§ 31-309 (a) and 31-302 to have effect and fosters harmony between these related statutes.

Our interpretation also aligns with the remedial purpose of the Workers' Compensation Act. The provisions of § 31-302 afford a commissioner significant discretion to decide whether to grant a commutation and to structure a commutation in accordance with the needs or preferences of the party seeking the commutation. See General Statutes § 31-302. Specifically, a commutation may be granted whenever the commissioner "finds it just or necessary . . . ." General Statutes § 31-302. The commissioner also has the discretion to grant a commutation "in whole or in part," which makes possible a number of award structures. General Statutes § 31-302. Interpreting § 31-309 (a) to include lump-sum payments pursuant to a commutation award in the calculation of the maximum weekly compensation would impede the commissioner's ability to grant a partial commutation of an award when a claimant is still receiving weekly payments to satisfy another portion of the same award. This would, in turn, diminish the commissioner's ability to structure an award to meet the needs and preferences of the claimant. As provided in § 31-302, a commissioner has the flexibility to structure an award in different ways, which reflects the remedial nature of the Work-

ers' Compensation Act.

Without reference to the lump-sum payment pursuant to the commutation, the plaintiff's award does not exceed the maximum weekly compensation under § 31-309 (a). The plaintiff's weekly compensation rate was $551.13. The maximum weekly compensation rate for the plaintiff's date of injury is $671. Because we have determined that the plaintiff's award does not violate § 31-309 (a), we conclude that the board did not err in affirming the order of the commissioner granting the plaintiff's request for a commutation.

II

We next address the defendant's claim that the board erred in not concluding that the commissioner's commutation order violates the cap on heart and hypertension benefits pursuant to § 7-433b (b). The defendant argues that the sum of the plaintiff's commutation award, weekly disability benefit, and weekly pension benefit violates the statutory cap imposed by § 7-433b (b). We disagree.

We begin by setting forth the additional legal principles pertinent to this claim. Section 7-433b (b) imposes a cap on the benefits that employees may collect under § 7-433c, the Heart and Hypertension Act. See General Statutes § 7-433b (b). Section 7-433b (b) provides in relevant part: "[T]he cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement."

In *Carriero* v. *Naugatuck*, supra, 243 Conn. 753, our Supreme Court held that this statutory cap on benefits is applicable to cumulative payments of disability compensation and retirement pension benefits whenever any portion of those payments is awarded under § 7-433c. If a retired employee receives any benefit under § 7-433c, the calculation of the ceiling on heart and hypertension benefits must take into account that employee's regular pension retirement benefits, not just the employee's disability pension benefits. See id., 750–51.

The statutory cap is applicable in the present case because the plaintiff was receiving both a disability benefit under § 7-433c and a retirement pension based on his years of service in the police department. Here, the plaintiff was receiving a disability benefit under § 7-433c to compensate him for a 70 percent permanent impairment of the bilateral kidneys caused by his hypertension. The award consisted of 245 weeks at the

weekly compensation rate of $551.13. As a retired police officer, the plaintiff was also receiving a weekly pension benefit related to his years of service. Because the plaintiff was receiving disability benefits under § 7-433c as well as unrelated retirement pension benefits, the plaintiff's award must comply with the statutory cap imposed by § 7-433b (b).

Although the statutory cap applies, we agree with the board that the plaintiff's award does not violate § 7-433b (b). The defendant argues that the onetime payment to be made to the plaintiff by virtue of the commutation order, together with the weekly disability benefit and pension payment to the plaintiff, violates the cap on heart and hypertension benefits imposed by § 7-433b (b). The defendant does not argue, and there is no evidence before us, that the plaintiff's cumulative weekly payment, without considering the lump-sum payment pursuant to the commutation order, exceeds the statutorily prescribed limit. Accordingly, inherent in the defendant's argument is the idea that a calculation of benefits for the purposes of the cap imposed by § 7-433b (b) should take into account a lump-sum payment made pursuant to a commutation order. We do not agree.

To address the defendant's claim, we must interpret § 7-433b (b) in accordance with the principles of statutory interpretation set forth in part I of this opinion. Section 7-433b (b) provides in relevant part that the "cumulative payments . . . for compensation and retirement . . . benefits under section 7-433c shall be adjusted so that the total of such cumulative payments . . . shall not exceed one hundred per cent of the weekly compensation being paid . . . to members of such department in the same position which was held by such member at the time of his death or retirement." Examining the text's plain meaning, the phrase "cumulative payments" reflects that the legislature intended to put a cap on recurring weekly payments that are comprised of both a disability benefit and a retirement pension benefit. The statute refers to "payments" in the plural, indicating that it applies to multiple payments. When an award is commuted, however, a portion of the award is paid as a *onetime* lump sum, which is a singular payment. The use of the plural suggests that the legislature did not intend to include a lump-sum payment pursuant to a commutation award in the calculations related to the statutory cap. Additionally, the statute refers to "cumulative payments" of disability and retirement benefits as being measured against and compared to the "weekly compensation" received by working members of the police department. This indicates that the legislature intended to limit the amount of *weekly* compensation benefits that a retired member of the department may receive. Because it is inconsistent with the plain meaning of the statute to treat a lump-sum payment pursuant to a commutation award

to be a weekly payment, it should not be considered in calculations concerning the weekly statutory cap. We are persuaded that the statute's plain objective is to limit the cumulative effect of several weekly benefits, not to prohibit a onetime commutation award.

Further, we must consider the relationship of § 7-433b (b) to other statutes. See General Statutes § 1-2z. As we noted in part I of this opinion, courts should construe statutes in such a manner as to "foster harmony" with related statutes in order to create a consistent body of law. (Internal quotation marks omitted.) *State* v. *Spears*, supra, 234 Conn. 91. Our interpretation of § 7-433b (b) permits §§ 7-433b (b) and 31-302 to coexist. If this court were to adopt the defendant's argument, any significant lump-sum payment pursuant to a commutation award under § 31-302 would result in a onetime violation of the statutory ceiling imposed by § 7-433b (b). To interpret the statute as the defendant suggests would thwart the legislature's expressed intent to permit commutation awards "in whole or in part . . . ." General Statutes § 31-302. We agree with the board that there is no "reasonable basis for concluding that the legislature intended to impose a blanket prohibition against commutation orders for this reason."

Our interpretation of the statute is also consistent with the remedial nature of the Workers' Compensation Act. As we noted previously in this opinion, the Workers' Compensation Act is remedial in nature and "should be broadly construed in favor of disabled employees." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 299 Conn. 277. This principle also applies to the provisions of § 7-433c. Id., 277–78. Interpreting the statutory cap on benefits imposed by § 7-433b (b) to exclude lump-sum payments pursuant to a commutation award is consistent with the remedial purpose of the Workers' Compensation Act. If we interpret the statutory cap in § 7-433b (b) to include commutation awards, these awards would almost always violate § 7-433b (b). Such an interpretation would greatly limit the commissioner's ability to structure an award to meet the needs and preferences of a workers' compensation claimant. For this reason, our interpretation of the statutory cap in § 7-433b (b), namely, that it does not apply to lump-sum payments pursuant to a commutation award, is consistent with the remedial purpose of the Workers' Compensation Act.

We agree with the board that, regardless of whether the commissioner had granted the plaintiff's request for a commutation, § 7-433b (b) would be violated only if the cumulative amount of the plaintiff's weekly disability benefit coupled with his weekly pension payment exceeded the statutory guidelines. They did not. Without reference to the onetime, lump-sum payment, the plaintiff did not collect more than 100 percent of the weekly compensation being paid to others in the same

position that the plaintiff held at his retirement. It is true that, during the week that the commutation award was granted, the plaintiff received the lump sum, the weekly disability benefit, and the weekly pension benefit. Although the lump-sum payment resulted in a single week in which the plaintiff received more than he would have if he had been working, any commutation would have caused the same result. If the commutation had not been granted, however, and the award had been spread out over the 245 week period, the plaintiff's weekly payments would not have exceeded 100 percent of the weekly payment received by others employed in the same position. Accordingly, the plaintiff's award did not violate the statutory cap.

III

Finally, we address the defendant's claim that the board improperly concluded that the commissioner's commutation order does not violate the principles of equity, including the prohibition on double recovery in the workers' compensation system. The defendant argues that the commissioner's approval of the commutation of the "back end" of the plaintiff's award while the "front end" benefits were being paid concurrently constitutes a double recovery. (Internal quotation marks omitted.) We disagree.

This court has long recognized that "[o]ur [Workers' Compensation] Act does not permit double compensation. . . . When an injury entitles a worker to benefits both under the compensation statute and under other legislation, so that a double burden would be imposed on the employer, our courts have held that compensation payments during the period of disability reduce the employer's obligation created by other legislation." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, 115 Conn. App. 306, 313, 971 A.2d 853, cert. denied, 293 Conn. 919, 979 A.2d 490 (2009). This prohibition on double recovery stems from the rationale that "[t]he law cannot permit [a] claimant to enjoy a windfall, i.e., to be paid twice for his medical expenses." (Internal quotation marks omitted.) *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 444 n.6, 594 A.2d 446 (1991).

Double recovery occurs "[w]hen an injury entitles a worker to benefits both under the compensation statute and under other legislation . . . ." (Internal quotation marks omitted.) *McFarland* v. *Dept. of Developmental Services*, supra, 115 Conn. App. 313. For example, this court has held, and our Supreme Court has affirmed, that an award received pursuant to the federal Longshore and Harbor Workers' Compensation Act must be "wholly credited" against a subsequent award arising out of the same injury under the state Workers' Compensation Act in order to prevent a double recovery by the plaintiff. *McGowan* v. *General Dynamics Corp./Electric Boat Division*, 15 Conn. App. 615, 615–16, 546 A.2d 893

(1988), aff'd, 210 Conn. 580, 566 A.2d 587 (1989). Our Supreme Court also has held that requiring an employer to pay a claimant for medical expenses that already have been paid by the claimant's medical insurance carrier constitutes an impermissible double recovery. See *Pokorny* v. *Getta's Garage*, supra, 219 Conn. 448.

In the present case, there is no double recovery. The plaintiff received a single award of 245 weeks of compensation at a rate of $511.13 per week. Although one-half of the award was paid in weekly installments and the other half was paid as a onetime lump sum, the plaintiff did not receive anything in excess of the *total* original award to which he was entitled. Thus, the fact that the plaintiff received the lump sum while he was simultaneously receiving weekly payments of the same award does not constitute a double recovery. As the board acknowledged in its decision, the plaintiff's "total payout is still predicated on, and limited to, the same number of weeks for which he would have received weekly benefits had he not chosen to convert part of his permanency award into a lump-sum payment."

Conceding that the plaintiff has received only the 245 weeks of compensation to which he is entitled, the defendant argues that the manner in which the payment was structured, rather than the amount, constitutes a double recovery. This argument, however, also fails. As illuminated by our case law, the principle against double recovery seeks to prevent a claimant from receiving a "windfall" or being "paid twice for his medical expenses." (Internal quotation marks omitted.) *Pokorny* v. *Getta's Garage*, supra, 219 Conn. 444 n.6. The facts in the present case simply do not demonstrate that the commutation order resulted in a windfall or double payment for the plaintiff. As our case law reflects, the principle against double recovery is not violated simply by virtue of when or how benefits are paid but whether a claimant has been "paid twice . . . ." (Internal quotation marks omitted.) Id.

The defendant further argues that the commutation order "is not just to all parties interested in the award." (Emphasis omitted.) Specifically, the defendant argues that, because the plaintiff received the lump-sum payment (due him for weeks 123 through 245) while he was still receiving weekly payments (due him for weeks 1 through 122), the plaintiff is "placed in the best position possible . . . while the [defendant is] being unduly burdened without any consideration." We do not agree.

Our Supreme Court has held that the commutation statute "[confers] upon the commissioner authority to commute a compensation award in those cases only where it is reasonably necessary for the welfare of the claimant and his dependents, and at the same time *is just to all parties interested in the award*." (Emphasis added.) *Reid* v. *Hartford Fuel Supply Co.*, 120 Conn.

541, 546, 182 A. 141 (1935). The defendant argues that this particular commutation award is unjust to the defendant because it "allows a lump-sum payment, but also weekly benefits for that same time period . . . ." According to the defendant, the structure of the commutation award is "an unpredicted loss to the fiscal year that could not have been budgeted for in advance." Although the structure of the commutation in the present case may present an unanticipated budgetary challenge for the defendant, like the board, "we are not persuaded that the financial difficulties attendant on compliance with the commutation order are such that the commissioner's decision to commute the award in the fashion requested by the claimant was improper." In fact, the initial financial burden on the defendant would have been more substantial had the plaintiff requested a commutation of the entire award at once, which he was entitled to do. It is unclear how the partial commutation of the award, coupled with a concurrent weekly benefit, constitutes an undue burden when the defendant could have been required to pay out the entire award up front had the plaintiff requested a full commutation. Further, the defendant is entitled to the usual actuarial discount in payment for the weeks covered by the commutation.[4] See General Statutes § 31-302. The actuarial discount contained in the commutation statute ensures that a "true equivalence of value [is] maintained" and that an employer is not made worse off due to a commutation. General Statutes § 31-302. We agree with the board's assessment that the actuarial reduction compensates the defendant for the prejudice associated with the contraction of the period of time over which the award must be paid. For these reasons, the plaintiff's award does not offend the principles of equity in our workers' compensation system.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] PMA Companies, the workers' compensation insurer for the city of Bridgeport, was also a defendant in this case and is a party to this appeal. For convenience, we refer in this opinion to the city of Bridgeport as the defendant.

[2] The plaintiff had been receiving weekly benefits since the commissioner issued the January 30, 2019 finding and award. Several weeks later, on April 15, 2019, when the commissioner granted the plaintiff's request to commute the final 123 weeks of the award, the plaintiff was still entitled to the remaining balance of the first 122 weeks of compensation, to be paid in weekly installments.

[3] The maximum weekly compensation rate for the plaintiff's date of injury is $671.

[4] General Statutes § 31-302 provides in relevant part that "[i]n any case of commutation, a true equivalence of value shall be maintained, with due discount of sums payable in the future . . . ."